RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0216p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JOHN L. HILL, FRANCINE BARNES, FRANCHOT
BARNES, FRANCESCA BARNES, and GLORY
CELESTINE,

> *Plaintiffs-Appellants,*

No. 03-2607

*v.*

BLUE CROSS AND BLUE SHIELD OF MICHIGAN,
> *Defendant-Appellee.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 03-40025—Paul V. Gadola, District Judge.

Argued: January 25, 2005

Decided and Filed: May 13, 2005

Before: MOORE and GILMAN, Circuit Judges; GWIN, District Judge.[*]

---

## COUNSEL

**ARGUED:** Michael G. Wassmann, ELWOOD S. SIMON & ASSOCIATES, Birmingham, Michigan, for Appellants. James J. Walsh, BODMAN, LONGLEY & DAHLING, Ann Arbor, Michigan, for Appellee. **ON BRIEF:** Michael G. Wassmann, Elwood S. Simon, ELWOOD S. SIMON & ASSOCIATES, Birmingham, Michigan, Stewart A. Lebenbom, LEBENBOM & PERNICK LLP, Detroit, Michigan, for Appellants. James J. Walsh, BODMAN, LONGLEY & DAHLING, Ann Arbor, Michigan, G. Christopher Bernard, BODMAN, LONGLEY & DAHLING, Detroit, Michigan, Joseph W. Murray, BLUE CROSS AND BLUE SHIELD OF MICHIGAN, Detroit, Michigan, for Appellee.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. Plaintiffs-Appellants John L. Hill, Francine Barnes, Franchot Barnes, Francesca Barnes, and Glory Celestine ("Plaintiffs") filed the instant putative class action against Defendant-Appellee Blue Cross and Blue Shield of Michigan

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

1

("BCBSM"), the third-party administrator for Plaintiffs' employer-sponsored health insurance program ("the Program"). Plaintiffs allege that BCBSM's handling of their claims for emergency-medical-treatment expenses resulted in the wrongful denial of benefits and constituted a breach of BCBSM's fiduciary duties to Program members under the Employee Retirement Income Security Act of 1974 ("ERISA"). The district court granted BCBSM's motion to dismiss Plaintiffs' suit without prejudice on the ground that Plaintiffs failed to exhaust administrative remedies available under the Program prior to filing suit. Plaintiffs now appeal, alleging, *inter alia*, that exhaustion is not required for claims for breach of fiduciary duty, that exhaustion of administrative-review procedures would be futile, and that Plaintiff Hill has in fact exhausted his administrative remedies. For the reasons set forth below, we **AFFIRM IN PART** and **REVERSE IN PART** the district court's order granting BCBSM's motion to dismiss Plaintiffs' complaint.

## I.  FACTUAL AND PROCEDURAL HISTORY

### A.  Factual History

#### 1.  Program Coverage of Emergency-Medical-Treatment Expenses

General Motors's ("GM") September 1999 collective bargaining agreement with United Auto Workers ("UAW") provides for the establishment of a GM-sponsored health insurance program. The Program's benefits include coverage for treatment of "medical emergencies":

> Services in the emergency room of a hospital are covered for the initial examination and treatment of conditions resulting from accidental injury or medical emergencies.
>
> * * *
>
> Emergency treatment:  Coverage is provided for the services of one or more physicians for the initial examination and treatment of conditions resulting from accidental injury or medical emergencies.

Joint Appendix ("J.A.") at 106, 110. The Program documents provide that the determination as to whether a claimant has suffered a "medical emergency" should be based on the symptoms exhibited by the claimant at the time of treatment, not the claimant's ultimate diagnosis:

> "[*M*]*edical emergency*" means a permanent health-threatening or disabling condition, other than an accidental injury, which requires immediate medical attention and treatment.
>
> The condition must be of such a nature that severe symptoms occur suddenly and unexpectedly and that failure to render treatment immediately could result in significant impairment of bodily function, cause permanent damage to the enrollee's health, or place such enrollee's life in jeopardy. *The enrollee's signs and symptoms verified by the treating physician at the time of treatment, and not the final diagnosis, must confirm the existence of a threat to the enrollee's life or bodily functions.*

J.A. at 101 (second emphasis added).

#### 2.  Current Claims-Processing Methodology

The central assertion underlying Plaintiffs' suit is that BCBSM, the Program's third-party administrator, has violated the Program's emergency-medical-treatment provisions by utilizing an automated claims-processing system that makes claim determinations based on a physician's final diagnosis rather than the claimant's signs and symptoms at the time of treatment. Plaintiffs allege that for some health insurance plans BCBSM administers, the claims-handling procedures have been

modified in that administrative review of a claimant's particular "signs and symptoms" is required before a claim is denied if the claimant's final diagnosis is not included on the list of conditions that automatically qualify for emergency medical coverage. BCBSM, however, allegedly has chosen not to implement this new claims-handling procedure for several employer-sponsored plans that it administers on behalf of large institutional clients, including GM. The Plaintiffs allege that BCBSM's decision not to implement its new claims-handling procedures for certain clients' plans arises out of a fear that increased benefit pay-outs will lead these companies to terminate BCBSM's third-party-administrator contracts. BCBSM, on the other hand, contends that it has not adopted the administrative-review procedures for the GM-sponsored plan because the plan's Administrative Manual sets forth the claims-handling procedures that BCBSM must follow, and any alteration of these procedures requires the consent of GM and the UAW.

### 3. Named Plaintiffs' Allegations

The instant class action includes five named plaintiffs: John L. Hill ("Hill"), Francine Barnes, Franchot Barnes, Francesca Barnes, and Glory Celestine ("Celestine").

Hill alleges that in December 2000, he sought treatment at the emergency room of Henry Ford Hospital for an infected growth on his back, and that he subsequently filed a claim for benefits under the Program. BCBSM granted the facilities portion of Hill's claim but denied the portion of the claim attributable to physician fees. The "Explanation of Benefits" ("EOB") form provided to Hill allegedly stated that:

> This service isn't payable because your contract only covers when the reported condition shows the patient received emergency care. The information we reviewed did not show a life-threatening medical emergency or an accidental injury caused by an outside force.

J.A. at 37 (First Am. Compl. ¶ 9). After receiving the EOB, Hill claims he "contacted his union representative, who later informed [him] that he was going to have to pay the claim personally." J.A. at 37 (First Am. Compl. ¶ 10).

Francine Barnes, Franchot Barnes, and Francesca Barnes each allege that they "visited emergency rooms for treatment of various medical conditions," and that their claims for benefits were "improperly denied by BCBSM." J.A. at 37 (First Am. Compl. ¶¶ 11, 12); J.A. at 38 (First Am. Compl. ¶ 13). Unlike Hill, none of the Barneses have alleged that they utilized any administrative-review procedures established under the Program; rather, they only allege that they "have spent a significant amount of time and resources attempting to resolve emergency medical benefit disputes with BCBSM and, thereby, have exhausted the administrative remedies available to them." J.A. at 52 (First Am. Compl. ¶ 48).

Celestine alleges that she was injured in an automobile accident and taken by ambulance to an emergency room for treatment. According to Celestine, BCBSM improperly refused to pay her claim based on her final diagnosis. Celestine also alleges that, "[a]fter receiving past due notices and letters from collection agencies for the amounts due, [she] communicated with Healthcare Recoveries, Inc., a consumer advocate for General Motor's [sic] health care programs, which is attempting to obtain payment of [her] benefits claims on her behalf." J.A. at 39-40 (First Am. Compl. ¶ 18). In addition, Celestine asserts that she and the other Plaintiffs "have spent a significant amount of time and resources attempting to resolve emergency medical benefit disputes with BCBSM and, thereby, have exhausted the administrative remedies available to them." J.A. at 52 (First Am. Compl. ¶ 48).

## B.  Procedural History

In January 2003, Hill filed the instant putative class action on behalf of himself and

> all persons who participate in, or are covered under, one or more of the employee benefit plans insured and/or administered by [BCBSM] who have coverage for emergency medical services and had one or more benefit claims for emergency medical services denied by BCBSM based on the patient's final diagnosis and/or medical condition . . . .

J.A. at 41 (First Am. Compl. ¶ 22); *see also* J.A. at 10 (Compl. ¶ 13).[1]  The four-count complaint seeks:  (1) declaratory and injunctive relief for breach of fiduciary duties pursuant to 29 U.S.C. §§ 1104 and 1132(a)(3); (2) declaratory and injunctive relief for breach of a fiduciary duty by a co-fiduciary pursuant to 29 U.S.C. §§ 1105 and 1132(a)(3); (3) recovery of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); and (4) restitution to the Program pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2).

In March 2003, Hill filed an amended complaint adding Francine Barnes, Franchot Barnes, Francesca Barnes, and Celestine as named plaintiffs.  BCBSM then moved to strike the allegations of these four additional named plaintiffs, asserting that the amendment of the complaint was improper under Federal Rule of Civil Procedure 15(a).  BCBSM also filed a Rule 12(b)(6) motion to dismiss on the grounds that:  (1) Hill had not exhausted the Program's administrative remedies, and 2) the Labor Management Relations Act ("LMRA"), not ERISA, governed Hill's claims.  In ruling on BCBSM's motions, the district court first ordered the addition of Celestine and the Barneses pursuant to Federal Rule of Civil Procedure 21, thereby rendering moot BCBSM's motion to strike.  The district court then determined that the Plaintiffs' complaint should be dismissed without prejudice because the Plaintiffs had failed to allege adequately that they had exhausted administrative remedies as required by ERISA.[2]  The Plaintiffs now appeal the dismissal of their claims against BCBSM.

## II.  ANALYSIS

## A.  Standard of Review

We review de novo the district court's dismissal of Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 451 (6th Cir. 2003).  We accept all the Plaintiffs' factual allegations as true and construe the complaint in the light most favorable to the Plaintiffs.  *See id.* at 451-52.  We will not affirm the district court's order dismissing Plaintiffs' complaint "unless it appears beyond doubt that the plaintiff[s] can prove no

---

[1]The instant class action has its genesis in another class action suit (referred to by the parties as "the *Tinman* litigation") filed against Blue Cross and Blue Shield of Michigan ("BCBSM") in Wayne County (Michigan) Circuit Court.  The *Tinman* litigation is based upon a Michigan statute (allegedly enacted after an investigation into BCBSM's claims-handling practices) that bans the use of final diagnoses in determining coverage for emergency medical care.  *See* MICH. COMP. LAWS § 550.1418.  Following certification of the class, that suit was removed to the U.S. District Court for the Eastern District of Michigan.  The district court granted summary judgment on preemption and exhaustion grounds to BCBSM with respect to those class members seeking benefits under ERISA-governed plans.  *See Tinman v. Blue Cross & Blue Shield of Michigan*, No. 00-CV-72327-DT, 2002 WL 230803, at **3-4 (E.D. Mich. Jan. 31, 2002).  The claims of those class members whose plans were not governed by ERISA were remanded to the Michigan trial court for further proceedings, *see id.* at *4, and the case at bar was filed on behalf of those class members whose claims had been deemed preempted by ERISA.  *See* Pls.-Appellants' Br. at 24-25 n.8.

[2]The district court did reject BCBSM's argument that the LMRA governed Hill's claims.  BCBSM, however, has not addressed this issue on appeal, and thus we deem it waived.  *See Radvanksy v. City of Olmsted Falls*, 395 F.3d 291, 310-11 (6th Cir. 2005).

set of facts in support of [their] claim[s] which would entitle [them] to relief." *Id.* at 452 (internal quotation marks and citation omitted).

## B.  Counts One and Two:  Fiduciary-Duty Claims Seeking Injunctive Relief

In Counts One and Two of their complaint, Plaintiffs allege that BCBSM violated its fiduciary duties to Program members by processing emergency-medical-treatment claims in a manner contrary to the terms of the Program documents and in the interest of GM (the plan sponsor and co-fiduciary) rather than the Program beneficiaries.  *See* 29 U.S.C. §§ 1104(a)(1)(A)(i), 1104(a)(1)(B), and 1104(a)(1)(D) (breach of fiduciary duty); 29 U.S.C. § 1105(a) (liability for co-fiduciary's breach of fiduciary duties).  Under both Counts One and Two, the Plaintiffs seek plan-wide injunctive relief.  *See* 29 U.S.C. § 1132(a)(3).

### 1.  BCBSM's Status as an ERISA Fiduciary

BCBSM first argues that the Plaintiffs' fiduciary-duty claims should be dismissed on the basis that BCBSM does not qualify as an ERISA fiduciary.  Specifically, BCBSM contends that the collective bargaining agreement requires it to use the claims-handling process set forth in the Administrative Manual and that BCBSM cannot alter its claims-handling procedures without violating the terms of the Program documents.  Appellee's Br. at 28-31.

As we explained in *Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mutual of Ohio*, "[w]hen an insurance company administers claims for an employee welfare benefit plan and has authority to grant or deny the claims, the company is an ERISA 'fiduciary' under 29 U.S.C. § 1002(21)(A)(iii)."  982 F.2d 1031, 1035 (6th Cir.), *cert. denied*, 510 U.S. 819 (1993).  In their complaint, Plaintiffs allege that:

> Pursuant to its third-party administrative services contracts, BCBSM is given and maintains discretionary authority to administer health care benefits claims through its own methodologies and administration procedures.  Pursuant to that discretion, BCBSM is responsible for determining whether or not benefit claims are paid or denied, and for otherwise representing and determining the rights of plan participants and beneficiaries with respect to such benefits received through ERISA plans.  As a result of this discretion and authority, BCBSM is a fiduciary of the ERISA plans for which it administers health care benefit claims.

J.A. at 45 (First Am. Compl. ¶ 33).  Because Plaintiffs have alleged in their complaint that BCBSM had discretion to grant or deny Plaintiffs' claims, we conclude that Plaintiffs have adequately pleaded BCBSM's status as an ERISA fiduciary to survive a motion to dismiss.

### 2.  Exhaustion of Administrative Remedies

BCBSM next argues that the dismissal of Plaintiffs' §§ 1104 and 1105 fiduciary-duty claims was proper because Plaintiffs failed adequately to plead exhaustion of administrative-review procedures.  Although it is well settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim, *see, e.g.*, *Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir. 1994), we have not yet decided whether a beneficiary must exhaust administrative remedies prior to bringing claims based on statutory rights, such as §§ 1104 and 1105 fiduciary-duty claims.  *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418-19 (6th Cir.

1998).[3] Instead, we have resolved such cases on the grounds that exhaustion would be futile or that the fiduciary-duty claim is merely a repackaged claim for individual benefits which the beneficiary must administratively exhaust before filing suit. *See id.* at 418-19; *Weiner v. Klais & Co.,* 108 F.3d 86, 91-92 (6th Cir. 1997). Because requiring the Plaintiffs to exhaust administrative remedies would be futile in this case, we again find it unnecessary to decide the more difficult issue of whether exhaustion of administrative remedies should be required for statutorily created rights.

### a. Fiduciary-Duty Claims as Repackaged Individual-Benefits Claims

The district court below determined that dismissal of Plaintiffs' §§ 1104 and 1105 fiduciary-duty claims was proper because these claims were merely repackaged claims for individual benefits and did not constitute actual fiduciary-duty claims. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615-16 (6th Cir. 1998) ("Because § 1132(a)(1)(B) provides a remedy for [the plaintiff's] alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3). . . . To rule in [the plaintiff's] favor would allow him and other ERISA claimants to simply characterize a denial of benefits as a breach of fiduciary duty, a result which the Supreme Court expressly rejected.") (citing *Varity Corp. v. Howe*, 516 U.S. 489, 512, 515 (1996)). The Plaintiffs argue, however, that the district court erred in characterizing their fiduciary-duty claims as repackaged individual-benefits claims because their claims for breach of fiduciary duty seek plan-wide injunctive relief, not individual-benefit payments. We agree.

In concluding that the Plaintiffs did not state valid §§ 1104 and 1105 fiduciary-duty claims, the district court relied on our prior decisions in *Wilkins* and *Weiner*, in which we upheld the district court's rejection of fiduciary-duty claims on the basis that they were actually unexhausted individual-benefit claims in disguise. *See Wilkins*, 150 F.3d at 616; *Weiner*, 108 F.3d at 91-92. Yet in neither *Wilkins* nor *Weiner* were we presented with fiduciary-duty claims arising out of asserted defects in plan-wide claims-handling procedures. Thus, we find *Wilkins* and *Weiner* to be of limited applicability to this case.

In *Fallick*, however, this court did have the opportunity to consider a fiduciary-duty claim based on allegations of systemic, plan-wide claims-administration problems. In that case, we reversed the district court's order granting summary judgment to an insurer in a suit brought by a beneficiary asserting claims for both breach of fiduciary duty and improper denial of individual benefits. In so ruling, we noted the difference between correcting the denial of individual claims on a beneficiary-by-beneficiary basis and altering, on a plan-wide basis, the methodology used to process claims for all beneficiaries. *See Fallick*, 162 F.3d at 419-20 ("[W]hile Nationwide has proven itself amenable to correcting obvious miscalculations in accounting, it has never demonstrated that it would alter or even consider altering its underlying methodology, notwithstanding Fallick's ERISA claims, both individually and on behalf of all other[s] similarly situated.").

In this case, an award of benefits to a particular Program participant based on an improperly denied claim for emergency-medical-treatment expenses will not change the fact that BCBSM is using an allegedly improper methodology for handling all of the Program's emergency-medical-treatment claims. Only injunctive relief of the type available under § 1132(a)(3) will provide the

---

[3]We note that other circuits are divided on this issue. *See Mason v. Cont'l Group, Inc.*, 474 U.S. 1087 (1986) (White, J., dissenting) (dissenting from denial of petition for writ of certiorari, noting circuit split with respect to question of whether exhaustion is required for claims alleging violation of statutory duties by ERISA fiduciaries); *see Powell v. A.T.&T. Communications, Inc.*, 938 F.2d 823, 825-26 (7th Cir. 1991) (noting that six circuits require exhaustion of administrative remedies in suits for breach of fiduciary duties under ERISA but that two circuits have declined to impose such a requirement).

complete relief sought by Plaintiffs by requiring BCBSM to alter the manner in which it administers all the Program's claims for emergency-medical-treatment expenses. *See id.* at 421 ("[W]hile Nationwide might make further symbolic, token concessions by correcting individual accounting errors that should not have been made in the first instance, this Court is certain that Nationwide will not seriously reconsider its methodology. Every such adjustment is but a pyrrhic victory for Fallick and the proposed class."). Thus, the district court erred in dismissing out of hand Plaintiffs' §§ 1104 and 1105 fiduciary-duty claims by simply reclassifying them as unexhausted claims for individual benefits.

### b. Futility Exception to Exhaustion

We also conclude that dismissal of Plaintiffs' §§ 1104 and 1105 fiduciary-duty claims for failure to exhaust administrative remedies is improper because, in this case, exhausting administrative remedies would amount to an exercise in futility. We have recognized a general exception to the exhaustion requirement for ERISA claims when the remedy obtainable through administrative remedies would be inadequate or the denial of the beneficiary's claim is so certain as to make exhaustion futile. *See id.* at 419. As we explained in *Fallick*:

> The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made. A plaintiff must show that it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision.

*Id.* (internal quotation marks and citations omitted).

In their complaint, Plaintiffs allege that exhaustion of administrative remedies would be futile because: (1) BCBSM's interests are aligned with GM, not the Program's beneficiaries, and (2) BCBSM has refused to modify its claims-handling process, notwithstanding its long-standing knowledge that the current procedures violate Program provisions. As stated in the complaint:

> Futility is particularly clear since Plaintiffs have sufficiently alleged breaches of fiduciary duty by BCBSM, and the existence of an inherent conflict of interest between BCBSM's obligation as a fiduciary for ERISA plan participants, and BCBSM's internal business motives. In fact, despite BCBSM's direct knowledge that its practices have violated, and continue to violate, the express terms of the ERISA plans, BCBSM has refused to change its practice with respect to a large portion of its administrative services contracts. History has shown that BCBSM will only change its practice pursuant to threat of legal judgment.

J.A. at 52 (First Am. Compl. ¶ 49).

Plaintiffs' allegation that utilizing administrative-review procedures in this case would be futile because of BCBSM's asserted conflict of interest is insufficient to sustain a finding of futility. *See Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000) ("That the plan administrator . . . and trustees who review appeals share common interests or affiliations is . . . insufficient to show futility.") (internal quotation marks and citation omitted). It is, however, reasonable to infer from BCBSM's alleged decision not to extend its new claims-handling procedures to certain employer-sponsored plans, like GM's Program, that BCBSM has already reached a determination on the issue that would be presented in administrative-review proceedings, i.e., that it is not required to adopt a new claims-handling procedure that would prevent the denial of claims based solely on the claimant's final diagnosis. Indeed, BCBSM represented to the district court during the hearing on the motion to dismiss and to this court on appeal that, because of purported provisions in GM's collective bargaining agreement with the UAW, BCBSM lacks the authority to institute the claims-handling changes sought by Plaintiffs. Thus, we reverse the

dismissal of Plaintiffs' §§ 1104 and 1105 fiduciary-duty claims because it would be futile to require exhaustion of these claims.

## C.  Count Three:  Individual-Benefits Claims

Count Three of Plaintiffs' complaint alleges that BCBSM improperly denied Plaintiffs' claims for reimbursement of emergency-medical-treatment expenses and seeks recovery of such funds pursuant to 29 U.S.C.§ 1132(a)(1)(B).  Beneficiaries seeking to recover improperly denied benefits must first exhaust the administrative remedies available to them, unless doing so would be futile or would furnish inadequate relief. *See, e.g., Weiner*, 108 F.3d at 90.  The Plaintiffs assert on appeal that the district court erred in dismissing Count Three of their complaint because Plaintiff Hill did in fact exhaust the administrative-review procedures available to him and because requiring exhaustion at this stage in the litigation would be futile.

### 1.  Plaintiff Hill

Plaintiff Hill asserts on appeal that dismissal of his § 1132(a)(1)(B) claim was improper because he did in fact exhaust the administrative-review procedures available to him.  In support of his position, Plaintiff Hill cites the four-step administrative-review procedures outlined in the Program documents:

> Step 1.  Following receipt of notification from the local plan, Control Plan or carrier with regard to denial of a claim in full or in part, an employee may request the local union benefit representative to review the disputed claim with the designated management representative.
>
> If requested to do so, the designated management representative will endeavor to obtain additional information from the Control Plan or carrier regarding the disputed claim.  The Control Plan or carrier will advise the management representative what, if anything, can be done to support the employee's claim for payment of benefits.
>
> Step 2.  If local union benefit representatives contest the position of the local plans, Control Plan or carriers as reported by the management representatives, they may refer the case on appeal forms provided for that purpose to the International Union for review with the Corporation.  At such times they shall notify the management representatives in writing of their intention.
>
> Step 3.  The International Union may review the disputed claim with the Corporation, local plan, Control Plan or carrier.  At the request of the International Union, the Corporation will request either the Control Plan or carrier, as appropriate, to review such claim.
>
> Step 4.  The Control Plan or carrier will be requested to report in writing to the Corporation and International Union its action as a result of such review.  If payment of the claim is denied in full or in part, the Control Plan or carrier will be requested to include in its report the pertinent reasons for the denial.

J.A. at 72, 123-24.  Plaintiff Hill contends that the only action required of him by the Program's administrative-review procedures was that, pursuant to Step 1, he contact his local union-benefits representative, and that the complaint alleges he took such an action. J.A. at 37 (First Am. Compl. ¶ 10) ("Following receipt of the EOB from BCBSM, John L. Hill contacted his union representative, who later informed John L. Hill that he was going to have to pay the claim personally.").

BCBSM counters that Hill's allegation that he contacted his union representative is insufficient to plead exhaustion because Hill's union representative never presented Hill's claim to BCBSM for review. Whether this is in fact the case is beside the point, however, because in reviewing BCBSM's motion to dismiss, we must accept as true the complaint's allegations and draw all reasonable inferences from them in favor of Plaintiff Hill. *See Marks*, 342 F.3d at 451-52. Although discovery may ultimately prove that Hill's union representative never presented Hill's claim to BCBSM or GM management,[4] it is also entirely possible that Hill's union representative shepherded Hill's claim through the entirety of the administrative-review process. Because, prior to discovery, Hill may not be privy to all of the communications between his union representative, GM management, and BCBSM, requiring Hill to plead with greater particularity the layers of review that his claim received would place too great an onus on beneficiaries at the motion-to-dismiss stage.[5] Thus, we reverse the decision of the district court and hold that Plaintiff Hill has adequately pleaded exhaustion of his § 1132(a)(1)(B) claim.

### 2. Other Named Plaintiffs

In contrast to Plaintiff Hill, the Barnes Plaintiffs and Plaintiff Celestine do not appear to have alleged that they utilized in any way the administrative-review procedures established by the Program documents. Rather, these Plaintiffs allege only that they "have spent a significant amount of time and resources attempting to resolve emergency medical benefit disputes with BCBSM and, thereby, have exhausted the administrative remedies available to them." J.A. at 52 (First Am. Compl. ¶ 48). Although Plaintiff Celestine also alleges that she "communicated with Healthcare Recoveries, Inc., a consumer advocate for General Motor's [sic] health care programs," the complaint provides no indication that Healthcare Recoveries, Inc. has pursued Celestine's claim through the required administrative-review channels. J.A. at 39-40 (First Am. Compl. ¶ 18).

Because the non-Hill Plaintiffs have not sufficiently alleged that they exhausted the administrative remedies available to them, these Plaintiffs must establish that exhaustion is not required for their individual-benefit claims. In their complaint, the Plaintiffs first assert that the permissive language used in establishing the administrative-review procedures means that the Plaintiffs are not required to exhaust such administrative remedies. J.A. at 52 (First Am. Compl. ¶ 48) ("[U]nlike BCBSM's certificates of insurance coverage for its own insured, exhaustion of administrative remedies is not *required* under the terms of the ERISA plans that BCBSM administers. Instead, these plans expressly provide that aggrieved plan participants and beneficiaries '*may*' either appeal benefit decisions to BCBSM or to the sponsors of the plans, *or* may instead opt to pursue their legal rights directly."). We have previously ruled, however, that permissive language in an administrative-review provision does not entitle a plaintiff to forego such administrative

---

[4] The district court asserted that, if Plaintiff Hill were deemed to have exhausted his administrative remedies in this case, "the entire ERISA exhaustion requirement would be rendered meaningless" because insurers "would be subject to federal litigation merely because a single local union representative declined, for whatever reason, to administratively pursue a claim." Joint Appendix ("J.A.") at 175-76 (D. Ct. Dismissal Order at 15-16). The district court further reasoned that any failures of Hill's union representative to pursue fully the available administrative-review procedures could be charged to Hill under the theory that the union representative was Hill's agent. These arguments are, at best, premature because discovery may reveal that Hill's union representative in fact did fully pursue Hill's claim.

[5] The district court ruled that Hill failed adequately to plead exhaustion because, although Hill alleged that he contacted his union representative, he did not allege that he directed the union representative to review his claim with a management representative. We believe, however, that this insistence on highly specific factual allegations disregards the concept of notice pleading and the standards for adjudicating a motion to dismiss for failure to state a claim. *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615 (6th Cir. 2004) ("Under the familiar rules of notice pleading in federal courts, a complaint should include merely 'a short and plain statement of the claim,' Fed. R. Civ. P. 8(a)(2), and a district court may dismiss a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") (internal quotation marks and citation omitted).

review and instead file suit in federal court. *See Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 454 (6th Cir. 1991).

The Plaintiffs also contend that they should not be required to exhaust administrative remedies because the administrative-review process would prove futile in this case. Although Plaintiffs have sufficiently alleged that exhaustion of their *fiduciary-duty* claims would be futile, Plaintiffs' futility argument with respect to their claims for *individual benefits* under § 1132(a)(1)(B) is unavailing. Assuming Plaintiffs' allegations to be true, BCBSM has made it clear that it will not be altering its plan-wide claims-handling procedures unless compelled to do so by court order. Plaintiffs have not alleged, however, that if they utilized the administrative-review procedures available to them, BCBSM would not conduct further review of their individual claims and remedy any improper claims denials. Rather, as the district court correctly noted, Plaintiffs allege in their complaint that "BCBSM has been able to thwart lawsuits for some time by . . . paying claims when inquiries are made . . . ." J.A. at 48 (First Am. Compl. ¶ 39); J.A. at 177 (D. Ct. Op. at 17); *see Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 505-06 (6th Cir. 2004) (concluding that futility exception did not apply based on evidence that defendant had previously provided relief when presented with claim disputes). Hence, the non-Hill Plaintiffs have failed to show that it is "certain that [their] claim[s] will be denied on appeal," as is required for futility-based waiver of the exhaustion requirement. *Fallick*, 162 F.3d at 419.

Finally, Plaintiffs assert that, even if they failed sufficiently to allege compliance with ERISA's exhaustion requirement, they should not be required to exhaust their individual-benefit claims because these claims are "intertwined" with their fiduciary-duty claims, for which they have shown that exhaustion would be futile. In support of this argument, Plaintiffs cite the decision of the U.S. District Court for the Northern District of Illinois in *Healy v. Axelrod Construction Co. Defined Benefit Pension Plan & Trust*:

> Regarding the counts not involving alleged breach of fiduciary duty, where such counts are "intertwined" with a fiduciary duty claim, this court has refused to impose the exhaustion requirement on the other claims. The non-fiduciary claims here are inseparable from the fiduciary claims as they all arise from the same course of conduct. Requiring exhaustion of the remaining claims would not further judicial economy or the interests of justice, and the court therefore declines to do so.

787 F. Supp. 838, 843 (N.D. Ill. 1992). Notwithstanding *Healy*, it is unclear why requiring exhaustion of Plaintiffs' individual claims for benefits would not serve "judicial economy or the interests of justice" in this case. As we explained in *Ravencraft*, "review or exhaustion enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." 212 F.3d at 343 (internal quotation marks, citation, and emphasis omitted); *see Costantino*, 13 F.3d at 975 (listing as the purposes of requiring exhaustion of administrative remedies, "(1) To help reduce the number of frivolous law-suits under ERISA. (2) To promote the consistent treatment of claims for benefits. (3) To provide a nonadversarial method of claims settlement. (4) To minimize the costs of claims settlement for all concerned. (5) To enhance the ability of trustees of benefit plans to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes. (6) To enhance the ability of trustees of benefit plans to correct their errors. (7) To enhance the ability of trustees of benefit plans to interpret plan provisions. (8) To help assemble a factual record which will assist a court in reviewing the fiduciaries' actions."). Unlike Plaintiffs' claims for plan-wide injunctive relief, Plaintiffs' claims for individual benefits under § 1132(a)(1)(B) will require an examination of the particular facts and circumstances pertaining to Plaintiffs' signs and symptoms at the time emergency medical treatment was provided. Even if BCBSM's methodology for processing emergency-medical-treatment claims is found to violate the terms of the Program, this does not mean that each of the claims filed by the Plaintiffs

automatically will be deemed meritorious and requiring payment under the terms of the Program. Given the fact-intensive nature of Plaintiffs' claims for individual benefits, requiring exhaustion of these claims would best promote judicial efficiency by allowing BCBSM, who has more experience in interpreting the Program documents, to make an initial coverage decision and to enable the creation of an administrative record which can then be reviewed by the courts should Plaintiffs still dispute the resolution of their claims.

## D.  Count Four:  Fiduciary-Duty Claim Seeking Restitution to the Plan

Plaintiffs finally appeal from the district court's dismissal of Count Four of their complaint, which seeks, pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), restitution and restoration to the Program of the "millions of dollars that BCBSM earned and/or that plan sponsors have saved, by using a system based on final diagnosis criteria to wrongfully administer emergency medical claims." J.A. at 59 (First Am. Compl. ¶ 73). Again, we reverse the district court's order dismissing this claim for failure to exhaust administrative remedies. Like their fiduciary-duty claims under §§ 1104 and 1105, Plaintiffs' § 1109 claim seeks plan-wide, not individual, relief. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985) ("[T]he entire text of § 409 [29 U.S.C. § 1109] persuades us that Congress did not intend the section to authorize any relief except for the plan itself."). Because BCBSM contends that its claims-handling procedures are in compliance with the Program documents (and indeed, compelled by them), BCBSM is certain to deny any claim for restitution to the Program based on its claims-handling procedures. Thus, exhaustion of a § 1109 fiduciary-duty claim would be futile in this case.

We do note that BCBSM has asserted on appeal that Plaintiffs' § 1109 claim should also be dismissed because if BCBSM is ordered to make payments to the Program to compensate for losses resulting from the improper denial of emergency-medical-treatment claims, BCBSM will simply seek reimbursement from GM, and thus there will be no real recovery to the Program. We decline to affirm the dismissal of Plaintiffs' § 1109 claim on this basis, however, because it rests solely on BCBSM's bald assertions regarding the nature of its contract with GM. Even if BCBSM had made its contract with GM available for this court to review, such an analysis would be inappropriate at the motion-to-dismiss stage, in which our focus is upon the contents of the Plaintiffs' complaint.

## III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's dismissal of the § 1132(a)(1)(B) claims of Plaintiffs Francine Barnes, Franchot Barnes, Francesca Barnes, and Glory Celestine for individual benefits; **REVERSE** the dismissal of Plaintiff Hill's § 1132(a)(1)(B) claim for individual benefits; **REVERSE** the dismissal of the §§ 1104, 1105, and 1109 fiduciary-duty claims with respect to all Plaintiffs; and **REMAND** for further proceedings not inconsistent with this opinion.