NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0334n.06

No. 22-4059

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JENNIFER KILNAPP,

  Plaintiff-Appellee,

v.

CITY OF CLEVELAND, OHIO, et al.,

  Defendants,

BAILEY GANNON, in his official and
personal capacity,

  Defendant - Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jul 21, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

OPINION

Before: COLE, CLAY, and KETHLEDGE, Circuit Judges.

**CLAY, Circuit Judge**. Plaintiff Jennifer Kilnapp commenced this action under 42 U.S.C.

§ 1983 and alleges that Defendants violated her rights under the Fourth and Fourteenth

Amendments to be free from the use of excessive force in the absence of a suspect posing an

immediate threat to police officers or others. Defendant Bailey Gannon appeals the district court's

denial of his motion for judgment on the pleadings filed under Federal Rule of Civil Procedure

12(c). For the reasons set forth below, we **AFFIRM**.

## I. BACKGROUND

### A. Factual History

The following factual summary is based upon the allegations in Kilnapp's complaint. *See*

*See Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 850 (6th Cir. 2023) (providing factual

summary "[a]s alleged in the complaint"); *see also S. Ohio Bank v. Merrill Lynch, Pierce, Fenner*

& *Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)( "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.").

On July 20, 2020, Kilnapp and Gannon, both Cleveland police officers, responded to a call reporting that there was an emotionally disturbed man with a gun in a boarding home. Gannon was a rookie, and Kilnapp was his field training officer. Upon arrival on the scene, Kilnapp and Gannon learned that the disturbed man, Darryl Borden, was in the second-floor bathroom, and they proceeded up the stairs to the hallway to confront him. Gannon stood by the bathroom door while Kilnapp stood a few feet behind him. Gannon opened the bathroom door and Borden was allegedly "holding a firearm but it was down at his side in one hand, pointed towards the ground. It was not raised or pointed at Gannon."[1] (Compl., R. 1, Page ID # 5).

According to the complaint, despite the fact that Borden did not threaten or step toward either officer, Gannon "panicked" and "spun back out of the doorway, where he was no longer in the line of sight or fire between himself and Borden." (*Id.* at Page ID # 6). Gannon did not make any commands for Borden to get on the floor, proceed out of the bathroom, or drop his weapon, and Borden remained in the bathroom while Gannon retreated. During this time, Kilnapp was standing "near the top of the staircase." (*Id.*). "As [Gannon] ran, [he] pointed his gun over his head behind him—in the opposite direction he was running—and began shooting." (*Id.*). Gannon

---

[1] Gannon later told investigators that "when he opened the door, Borden was holding a gun in two hands and pointing it at the door." (Compl., R. 1, Page ID # 9). Kilnapp avers that Gannon's version of events is neither possible or supported by the subsequent investigation nor the body camera footage.

was purportedly "not looking where he was shooting." (*Id.*). After Gannon's shots, Borden fired his gun.

Kilnapp supports her allegation that Gannon fired first by pointing to the trajectory tracing and audio testing of Gannon's body camera. Kilnapp was hit in the right forearm by one of Gannon's fired bullets, and the bullet fragmented and punctured her bicep; Kilnapp was also struck with a bullet in her armpit which traveled through her chest to near her spine. Kilnapp was able to exit the home on her own, and was taken to the hospital where surgeons were able to remove the bullet fragment near her spine.

The Ohio Bureau of Criminal Investigations ("BCI") conducted a forensic examination of the scene, which included laser scans and 3D modeling to determine the bullet trajectories. Based on BCI's model, the investigators determined that the bullet entered "the wall near the top of the staircase on a slight downward angle" and "[b]ecause Gannon was running down the stairs when he fired . . . Gannon must have been holding his gun above his head when he fired." (*Id.* at Page ID # 8). BCI modeling also provided Kilnapp's approximate vantage point when Gannon began shooting and the path of Borden's bullets. "The forensic examination at the scene show[ed] no bullets from Borden fired even remotely in Kilnapp's direction . . . . Borden fired from inside the bathroom into the bathroom door before the bullets landed in the wall opposite him. Kilnapp was never in Borden's line of fire." (*Id.* at Page ID # 9). No body camera footage suggests that Borden shot at Kilnapp. (*Id.*). Gannon "admits that a bullet from his service weapon inadvertently struck [Kilnapp.]" (Answer, R. 14, Page ID # 70).

The City of Cleveland charged Borden with attempted murder, based on its belief that Borden shot Kilnapp. Kilnapp alleges that the Cleveland division of police and the prosecutor's office falsely reported that Borden intended to ambush the officers from the bathroom, and that

they continued to claim that Borden shot Kilnapp, despite BCI modeling, ballistic testing, and body camera footage that established that this narrative was not true. Borden's attempted murder charges were dropped in June of 2021, nearly a year after the shooting.

In March of 2021, the Cleveland chief of police suspended Kilnapp for neglecting to turn on her body camera before entering the house on the day of the shooting. According to Kilnapp this type of infraction typically results in counseling, not suspension. Meanwhile, Gannon faced no consequences for providing a misleading description of the events that occurred on the day Kilnapp was shot, nor for mishandling his firearm. Kilnapp was unable to return to work for two years and is no longer a full-time patrol officer. Kilnapp's injury caused nerve damage in her right arm, and she continues to experience "physical pain, weakness, numbness, and tingling in her arm, wrist, and hand;" she also suffers from post-traumatic stress disorder. (Compl, R. 1, Page ID # 12). It took a year for Kilnapp to regain her full range of motion.

### B. Procedural History

Kilnapp filed her complaint on July 13, 2022, against Defendants City of Cleveland ("the City"); Dornat Drummond, the City of Cleveland's chief of police, in his official capacity; and Gannon in his official and personal capacity. Kilnapp brought her complaint under 42 U.S.C. § 1983 and alleged Gannon used excessive force in violation of the Fourth and Fourteenth Amendments. Defendants filed separate motions. On September 16, 2022, the City, Drummond in his official capacity, and Gannon in his official capacity, filed a motion to dismiss Kilnapp's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). On September 22, 2022, Gannon, in his individual capacity, filed an answer and a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). On December 9, 2022, the district court denied both motions; but dismissed claims against Drummond and Gannon in their official capacities as

duplicative of claims against the City. The City did not appeal the denial of its motion to dismiss. This appeal concerns only the district court's denial of the motion for judgment on the pleadings that Gannon filed in his individual capacity.

Gannon argued in the court below that he "is shielded from suit by qualified immunity[.]" (Order, R. 29, Page ID # 403). Gannon also asserted immunity under the common-law Fireman's Rule and the Fellow Servant Doctrine under Ohio's Worker's Compensation System. The district court determined that factual disputes may exist as to whether Gannon opened fire first and "whether Defendant's actions were intentional or inadvertent;" however, at this early stage of litigation, the district court held that Kilnapp met her burden in plausibly alleging a Fourth and Fourteenth Amendment violation. (*Id.* at Page ID # 404–05). The district court found that because federal qualified immunity did not apply, the state and common-law immunities are necessarily denied as well. *See Felder v. Casey*, 487 U.S. 131, 138 (1988) ("[W]e have held that a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted, even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy[.]"). [2] In sum, the district court held that the complaint plausibly alleged that "Defendant Gannon used excessive and unreasonable deadly force under the circumstances, and that Defendant Gannon could not have reasonably believed the use of deadly force was lawful." (Order, R. 29, Page ID # 405–06). Gannon timely appealed.

---

[2] Gannon does not contest the court's denial of his state and common law immunities on appeal.

## II.  DISCUSSION

### A.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "We review de novo a judgment on the pleadings granted pursuant to Rule 12(c) . . . using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)."  *Moore, Successor Tr. of Clarence M. Moore & Laura P. Moore Tr. v. Hiram Twp.*, 988 F.3d 353, 357 (6th Cir. 2021) (citing *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 389 (6th Cir. 2007)).

A motion to dismiss is properly granted if the plaintiff "fail[ed] to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the plaintiff must allege facts that are sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  The reviewing court must accept the factual allegations in the complaint "as true and construe the complaint in the light most favorable to the [p]laintiff[]."  *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005).  "A Rule 12(c) motion 'is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'"  *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

### B. Qualified Immunity

Qualified immunity protects governmental officials from suit as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A two-step inquiry applies. The first question is "whether the facts, when taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right[.]" *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015). The court then asks whether the right was "clearly established" such "that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). District courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)

Although a defendant's "entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (alteration in original) (quotation marks and citations omitted). "The reasoning for our general preference is straightforward: 'Absent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is "obvious" or "squarely governed" by precedent, which prevents us from determining whether the facts of this case parallel a prior decision or not' for purposes of determining whether a right is clearly established." *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019) (quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)). Therefore, it is generally inappropriate for a

district court to grant a 12(c) motion based on qualified immunity. *Wesley*, 779 F.3d at 433; *see also Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

Although the factual record is currently undeveloped, Gannon nonetheless argues that he is entitled to qualified immunity because he did not violate a clearly established constitutional right under the Fourth or Fourteenth Amendments. We find his argument unpersuasive, especially at this stage of the litigation.

### 1. Constitutional Violation

With respect to the first qualified immunity prong, the question is whether "the plaintiff['s] version of the events, relied upon by the district court, supports a holding that defendants violated [the plaintiff's] Fourth Amendment right to be free from excessive force." [3] *Kirby v. Duva*, 530 F.3d 475, 482 (6th Cir. 2008). The Fourth Amendment prohibits police from using excessive force while making an arrest or seizure. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). The use of deadly force is excessive and unreasonable unless there is probable cause to believe that the suspect poses an immediate threat to the officer or to others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Graham*, 490 U.S. at 396. To determine whether such probable cause exists, we consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Our precedent establishes that the question of whether a suspect posed an immediate danger is dispositive: where the suspect poses no immediate threat to the safety of an officer or others, the

---

[3] Kilnapp pleads in the alternative, that if she fails to establish a constitutional violation under the Fourth Amendment, then a violation can be established under the Fourteenth Amendment. Because we find that Kilnapp meets the standards set forth by the Fourth Amendment, we need not evaluate her claim under the Fourteenth Amendment.

use of deadly force is unreasonable and violates the Fourth Amendment. *Foster v. Patrick*, 806 F.3d 883, 887 (6th Cir. 2015).

Kilnapp alleges that Gannon violated the Fourth Amendment when he shot his gun without looking, and "shot Kilnapp incorrectly believing she was Borden following him." (Compl., R. 1, Page ID # 16). Gannon avers that qualified immunity bars Kilnapp's claim because: (1) he did not seize Kilnapp as defined by the Fourth Amendment; and (2) his actions were reasonable given the circumstances. We find that Kilnapp has sufficiently alleged a Fourth Amendment violation.

### i. Seizure

Gannon argues that because the firing of his gun was not intended to hit Kilnapp, and because Kilnapp was not subject to his intended seizure, a Fourth Amendment seizure of Kilnapp is not established. This is an incorrect interpretation of the law.

"While it is not always clear just when minimal police interference becomes a seizure . . . there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Garner*, 471 U.S. at 7 (citing *United States v. Mendenhall*, 446 U.S. 544 (1980)). However, the force must be applied with an "intent to restrain, as opposed to force applied by accident or for some other purpose." *Torres v. Madrid*, 141 S. Ct. 989, 991 (2021). Thus, "[t]he appropriate inquiry is whether the challenged conduct objectively manifests an intent to restrain." *Id.* Importantly, and relevant in this case, "[a] seizure occurs even when an unintended person or thing is the object of the detention or taking, . . . but the detention or taking itself must be willful." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989) (citations omitted). In *Brendlin v. California*, 551 U.S. 249 (2007), the Supreme Court reaffirmed this *Brower* finding that an unintended person may be seized so long as the seizure is not the result of "an unknowing act." *Id.* at 254 (quoting *Brower*, 498 U.S. at 596); *see also Fisher v. City of*

*Memphis*, 234 F.3d 312, 318 (6th Cir. 2000) (holding that a "violation of the Fourth Amendment requires an intentional acquisition of physical control . . . . [A] seizure occurs even when an unintended person or thing is the object of the detention or taking, so long as the detention or taking itself is willful."); *Campbell v. Cheatham Cnty. Sheriff's Dep't*, 47 F.4th 468, 478 (6th Cir. 2022) (reasoning, through example, that unintended targets are protected under the Fourth Amendment: "[w]e have explained that when an officer seizes one person by shooting at a car, . . . the officer seizes everyone in the car, even if the officer is unaware of the presence of passengers.").[4]

Kilnapp's status as a police officer does not remove her from the protections of the Fourth Amendment; she qualifies as an unintended target. In this case, Gannon fired his gun intentionally to seize Borden. However, as a result of his actions, Gannon shot Kilnapp who was an unintended target. (*Id.*). If Kilnapp alleged that Gannon's gun had fired by accident, then our analysis would differ. *Brower* holds that an unintentional action of an officer cannot be construed to be an intentional attempt to seize an individual. 498 U.S. at 597 (explaining that "[t]he pursuing police [stopping a car based on] his loss of control of his vehicle and the subsequent crash [does not establish intent to seize the individual in the car]," however, "[i]f, instead of that, the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure."). In this case, Kilnapp does

---

[4] Gannon quotes *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000), which states that the "Fourth Amendment 'reasonableness' standard does not apply to section 1983 claims which seek remuneration for physical injuries inadvertently inflicted upon an innocent third party by police officers' use of force while attempting to seize a perpetrator, because the authorities could not 'seize' any person other than one who was a deliberate object of their exertion of force." We need not spend time distinguishing with *Claybrook*, as *Claybrook* precedes *Brendlin*. Supreme Court authority controls. *See Salmi v. Sec'y of Health & Hum. Servs*., 774 F.2d 685, 689 (6th Cir. 1985).

not allege that Gannon accidently shot his gun; based upon the allegations in Kilnapp's complaint, the shooting of the gun was intentional, the individual that fell into contact with the bullet was unintentional. As discussed above, an unintentional victim is protected under the Fourth Amendment. Accordingly, Kilnapp properly alleged seizure under the Fourth Amendment. To hold otherwise would ignore binding Supreme Court precedent.

### ii. *Reasonableness*

Kilnapp alleges sufficient facts to establish that Gannon's behavior was objectively unreasonable.

When a plaintiff is "seized" by means of excessive force, the plaintiff must prove that, under the pertinent circumstances, the means used to detain her were objectively unreasonable. *Graham*, 490 U.S. at 395. Whether a seizure is objectively reasonable depends on the totality of the circumstances, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006). Particularly as it relates to a qualified immunity defense, "reasonableness must be judged from the perspective of a reasonable officer on the scene, not with the 20/20 vision of hindsight." *Id*.

Viewed in that light most favorable to Kilnapp, Gannon acted unreasonably by blindly deploying a firearm over his head when no suspect was in pursuit of him. Based on Kilnapp's allegations, Borden remained in the bathroom, while Gannon ran downstairs and deployed the first shots from his firearm. A factual dispute may exist as to the timing of when the weapons were used, as Borden also deployed his weapon during the incident; however, at this stage of litigation, the Court takes the facts as alleged in the complaint as true. Further, Kilnapp can be construed to serve as a proxy for a reasonable officer; she stood beside Gannon during the same incident,

without firing her weapon or fleeing. Based on the record before us, at this early stage of litigation, and without the benefit of discovery, we conclude any reasonable officer would know it to be unacceptable to fire a gun blindly when no imminent threat is present. Moreover, a district court should not grant dispositive motions in excessive force cases where there are questions of fact whether someone objectively posed a serious threat of immediate harm. *See Jacobs v. Alam*, 915 F.3d 1028, 1041 (6th Cir. 2019) ("[B]ecause [the parties' disputes], do not raise a purely legal question about whether [the plaintiff's] version of the events supports a claim of violation of clearly established law, so too do we lack jurisdiction here). Accordingly, Kilnapp has sufficiently alleged facts to establish a Fourth Amendment violation.

### 2. Clearly Established Law

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (cleaned up). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). There does not need to be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741 (citing *Anderson*, 483 U.S. 635 at 640). But "there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Wesby*, 138 S. Ct. at 590 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)).

In this case, there is no doubt that the law is clearly established. "[D]eadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment," *Garner*, 471 U.S. at 7, and

the individual injured need not be the intended target of the force to be seized, *Brendlin*, 551 U.S. at 254 (2007). Gannon applied deadly force with the intent to seize Borden. Kilnapp was shot instead. Although Kilnapp was not the intended target, she was still seized under the Fourth Amendment. Further, viewed in that light most favorable to Kilnapp, Gannon acted unreasonably by blindly deploying a firearm over his head when no suspect posed a threat to him. The law is sufficiently clear, that in this case, based on the facts alleged in the complaint, "every reasonable official would have understood" that Gannon's actions violated Kilnapp's Fourth Amendment rights. *See al-Kidd*, 563 U.S. at 741 (quotation marks and citation omitted). Therefore, Gannon is not entitled to a judgment as a matter of law. Accordingly, this Court affirms the district court's decision to allow Kilnapp's excessive force claims against Gannon to proceed to discovery.

### III. CONCLUSION

For the aforementioned reasons, the judgment of the district court is **AFFIRMED**.