RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0072P (6th Cir.)
File Name: 01a0072p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

HINEY PRINTING COMPANY,
          *Plaintiff-Appellant/*
                *Cross-Appellee,*

                                    Nos. 99-4535;
                                    00-3012

          *v.*

JEANNINE BRANTNER,
          *Defendant-Appellee/*
                *Cross-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 99-00349—James S. Gwin, District Judge.

Argued: March 6, 2001

Decided and Filed: March 16, 2001

Before: MARTIN, Chief Judge; MOORE, Circuit Judge;
          TARNOW, District Judge.[*]

---

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

_____

**COUNSEL**

**ARGUED:** Daran P. Kiefer, KREINER & PETERS, Cleveland, Ohio, for Appellant. Mark C. Willis, WILLIS & LINNEN, Akron, Ohio, for Appellee. **ON BRIEF:** Daran P. Kiefer, KREINER & PETERS, Cleveland, Ohio, for Appellant. Mark C. Willis, WILLIS & LINNEN, Akron, Ohio, for Appellee.

_____

**OPINION**
_____

   BOYCE F. MARTIN, JR., Chief Judge. Hiney Printing Company appeals, and Jeannine Brantner cross-appeals, the district court's grant of summary judgment in part to Hiney Printing and in part to Brantner in this ERISA action seeking enforcement of the terms of the subrogation and reimbursement provisions of Hiney's employee benefit plan. For the following reasons, we affirm the district court.

I.

   Hiney Printing Company has an Employee Benefit Plan established pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*. The Benefit Plan is set forth in a Master Document Plan, and is administered by Administrative Service Consultants. The Benefit Plan contains two provisions regarding accident medical expenses: a subrogation provision and a reimbursement provision. These provisions provide as follows,

RIGHT OF SUBROGATION

The Plan shall be subrogated to the extent of any payments under this Plan of health coverage to all of the

Plan Member's right of recovery therefore irregardless [sic] of the entity or individual from who the recovery may be due. . . The Plan will have the right, at its discretion and Plan Administrator's sole instigation, to take legal action on behalf of the insured or on behalf of the Plan itself. Any amounts so recovered, however designated, shall be apportioned as follows: this Plan shall be reimbursed to the extent of its payments under this plan of health coverage. If any balance then remains from such recovery, it shall be applied to reimburse the Plan Member and any other policy providing benefits to the Plan Member as their interest may appear.

## REIMBURSEMENT

If the Plan member recovers damages from any party or through any coverage named above, he must hold in trust for the Employer the proceeds of the recovery, and must reimburse us to the extent of payment made

Jeannine Brantner was an employee of Hiney Printing from 1971 until she suffered serious injuries in a motor vehicle accident on November 20, 1995. Although Brantner's injuries prevented her from continuing her employment with Hiney Printing, she continued to participate in its Benefit Plan. From the date of the accident until February 1998, Brantner incurred $57,106.47 in medical expenses. Brantner has an eighth grade education and a vocational assessment deemed her competitively unemployable in the labor market. Brantner estimates her future lost earnings, assuming a retirement age of sixty-five, to exceed $200,000, and future medical care to be $1000 per year. Brantner also filed a personal injury claim against the party responsible for the accident, which she settled in August 1998, for $103,000.

Hiney's Benefit Plan, through Administrative Service Consultants, paid $36,708.77 towards Brantner's medical expenses. In November and December, 1997, Subro Audit, acting on behalf of Administrative Service Consultants,

contacted Brantner's attorney regarding a possible subrogation claim. On December 23, Brantner's attorney sent letters to Administrative Service Consultants and Subro Audit requesting plan information, which ERISA obligates the plan administrator to provide upon request. *See* 29 U.S.C. § 1024 (b)(4).

On February 16, 1999, Hiney Printing filed this ERISA action for specific performance and restitution through enforcement of the Benefit Plan's subrogation and reimbursement provisions. Hiney Printing's suit sought to recover from the settlement proceeds the medical benefits it paid to Brantner. Brantner counter-claimed for statutory damages pursuant to 29 U.S.C. § 1332(c)(1) for failure to produce requested plan information. The district court granted Brantner's motion for summary judgment on the complaint, finding that the subrogation and reimbursement provisions were ambiguous, and therefore the make-whole rule prevented their enforcement. The district court also granted Hiney Printing's motion for summary judgment on the counter-claim, refusing to impose fines under ERISA on the grounds that Brantner failed to make a proper request for ERISA plan documents as required by 29 U.S.C. § 1132(c)(1).

## II.

We review the district court's grant of summary judgment de novo. *See Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372, 1376 (6th Cir. 1995) (citations omitted). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, the moving party establishes that there is no genuine issue of material fact and they are entitled to judgment as a matter of law. *Id*.

### A. The Subrogation Provision

The make-whole rule of federal common law "provides that an insurer cannot enforce its subrogation rights unless and until the insured has been made whole by any recovery."

asked to be advised if Administrative Service Consultants was not the plan administrator. On January 12, 1998, Subro Audit responded with a short letter stating "enclosed is the Plan language you requested," to which was attached three pages of the Plan, including a section entitled "Statement of Rights," which advised that plan participants are entitled to "obtain copies of all plan documents and other Plan information upon written request to the Plan Administrator," and a page designating Hiney Printing as the plan administrator, listing its address and telephone number. Thus even if Brantner herself could have reasonably believed from her past dealings with Administrative Service Consultants that a request for information should be directed towards Administrative Service Consultants, this communication from Subro Audit should have informed Brantner's counsel that in fact Hiney Printing was the designated plan administrator charged with supplying requested plan information. Given this, and the lack of precedent for expanding the statutory definition of a plan administrator under ERISA, we find that the district court did not abuse its discretion in refusing to impose statutory penalties on Hiney Printing.

## IV.

We AFFIRM the district court's grant of summary judgment in part to Brantner and in part to Hiney Printing.

comply within thirty days with a request for information from a plan participant "may in the court's discretion be personally liable to such participant . . . in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c). ERISA defines the plan administrator as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A).

Brantner argues that even though Hiney Printing is the designated plan administrator and she requested plan information from Administrative Service Consultants, Hiney Printing can be held liable for Administrative Service Consultants' failure to produce the requested information because Administrative Service Consultants was the "de facto" administrator. Brantner points to other sections of the Master Plan Document identifying Administrative Service Consultants as the plan supervisor and instructing questions regarding claims to be directed to it. Brantner, however, offers no binding case law from this Circuit to support her assertion that a plan administrator may be held liable based on information requests directed to someone other than the administrator.

The law in this Circuit is clear that "[o]nly a plan administrator can be held liable under section 1132(c)." *Vanderklok v. Provident Life & Accident Insurance Co.*, 956 F.2d 610, 617 (6th Cir. 1992). It is undisputed that the Master Plan Document defines Hiney Printing as the plan administrator, and that Brantner, through counsel, directed her request for plan information to Administrative Service Consultants and Subro Audit, rather than Hiney Printing.

Moreover, Brantner's claim that "at no time was [she] informed that Administrative Service Consultants was not the plan administrator," is belied by the record. The December 23 letters from Brantner's attorney to Administrative Service Consultants and Subro Audit requested plan information and

*Copeland Oaks v. Haupt*, 209 F.3d 811, 813 (6th Cir. 2000) (quoting 16 Couch on Insurance 2d § 61:64). *Copeland Oaks* examined the applicability of the make-whole rule to a subrogation clause in an ERISA plan and held "that in order for plan language to conclusively disavow the default rule, it must be specific and clear in establishing both a priority to the funds recovered and a right to any full or partial recovery." *Id*. Because the plan language at issue in *Copeland Oaks* failed to establish a right to any partial recovery, the make-whole rule applied.[1]

Hiney Printing argues that the make-whole rule does not apply to the subrogation provision because the subrogation provision unambiguously establishes that the Benefit Plan enjoys priority over the insured in recovering damages. While it may be true, as Hiney Printing argues, that the language contained in the subrogation provision establishes first priority to any funds recovered from a responsible party, *Copeland Oaks* commands that to avoid the application of the make-whole rule, the Plan must also unambiguously establish a right to any full or partial recovery. This the subrogation provision fails to do. Nor does the phrase "to the extent of any payments" clearly disavow the make-whole rule. While this phrase may establish the Benefit Plan's subrogation rights regarding any amount it paid towards Brantner's medical expenses, it suffers from the same ambiguity as the plan language in *Copeland Oaks*: it does not address whether this right applies when Brantner has not been fully compensated for her injuries. We therefore find the subrogation provision ambiguous because it is silent as to whether the right of

---

[1] Relevant portions of the plan provision at issue in *Copeland Oaks* provided that "The Covered person agrees to recognize the Plan's right to subrogation and reimbursement. These rights provide the Plan with a priority over any funds paid by a third party to a Covered Person relative to the injury or sickness, including a priority over any claim for non-medical or dental charges, attorney fees, or other costs and expenses." *Copeland Oaks*, 209 F.3d at 813.

subrogation applies to partial recovery, and accordingly, the make-whole rule applies.

### B. The Reimbursement Provision

Hiney Printing argues that the make-whole rule does not apply to reimbursement provisions; and that even if the make-whole rule did apply to reimbursement provisions, the reimbursement provision contained in the Benefit Plan is unambiguous and requires Brantner to repay the Benefit Plan in full from her settlement.

While subrogation and reimbursement are distinct doctrines, we see no principled reason for treating them differently when it comes to the default application of the make-whole rule to ambiguous provisions. Indeed, the provision at issue in *Copeland Oaks*, while designated a subrogation clause, addressed both a right of subrogation and a right of reimbursement. *See Copeland Oaks*, 209 F.3d at 811 ("Part of the subrogation clause of the Plan provides: The Covered Person agrees to recognize the Plan's right to subrogation and reimbursement. These rights provide the Plan with priority over any funds paid by a third party to a Covered Person . . ."). Nor is the holding of *Copeland Oaks*, applying the make-whole rule to "plan language" that was not "specific and clear in establishing both a priority to the funds recovered and a right to any full or partial recovery," restricted to subrogation clauses. *Id*. at 813.

In the present case, the reimbursement provision, like the subrogation provision, fails to clearly establish that Hiney Printing's right to reimbursement applies to any full or partial recovery. The provision merely obligates plan members to "reimburse [the Benefit Plan] to the extent of payments made." It thus fails to adequately inform Brantner that Hiney Printing could enforce this provision even if she had not been completely compensated for the financial expenses incurred as a result of her serious medical injuries. We therefore find the reimbursement provision ambiguous because it is silent as

to whether the right of reimbursement applies to partial recovery, and accordingly, the make-whole rule applies.

### C. Application of the Make-Whole Rule

Having found both the subrogation and reimbursement provisions ambiguous because they do not clearly establish that they apply to a partial recovery by the insured, the make-whole rule will bar their enforcement if Brantner has not been fully compensated for her injuries. The district court found that Brantner has not been made whole by her $103,000 settlement in light of her continued medical costs and lost wages. These medical costs, undisputed by Hiney Printing, include approximately $1000 per year in medical expenses and $3000 per year in chiropractic expenses, and Brantner's lost wages exceed $200,000. Because there is no clear error in this factual finding that Brantner has not been fully compensated, the make whole rule prevents Hiney Printing from recovering the benefits it paid Brantner.

### III.

We review the district court's decision on the imposition of penalties under § 1132(c) for abuse of discretion. *See Bartling v. Fruehauf Corp*., 29 F.3d 1062, 1068 (6th Cir. 1994) (noting the abuse of discretion standard applies because "the statute expressly grants a district court discretion in imposing penalties for an employer's failure to disclose"). An abuse of discretion "exists only when the reviewing court is firmly convinced that a mistake has been made." *Id*.

ERISA imposes particular duties on a plan administrator to provide information to a plan participant. *See* 29 U.S.C. § 1024(b)(4). Specifically, a plan administrator shall "upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). An administrator who fails to