*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0074p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JOHN T. GORE,

        *Plaintiff-Appellant,*

    *v.*

EL PASO ENERGY CORPORATION LONG TERM
DISABILITY PLAN and EL PASO ENERGY
CORPORATION,

        *Defendants-Appellees.*

No. 05-6792

>

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 02-01008—Aleta A. Trauger, District Judge.

Argued: October 24, 2006

Decided and Filed: February 23, 2007

Before: GIBBONS and McKEAGUE, Circuit Judges; TARNOW, District Judge.[*]

---

## COUNSEL

**ARGUED:** Bynum E. Tudor III, TUDOR LAW FIRM P.C., Nashville, Tennessee, for Appellant.
Mark W. Peters, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellees.
**ON BRIEF:** Bynum E. Tudor III, TUDOR LAW FIRM P.C., Nashville, Tennessee, for Appellant.
Mark W. Peters, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellees.

---

## OPINION

---

    ARTHUR J. TARNOW, District Judge. Plaintiff, John T. Gore appeals the district court's grant of summary judgment in which all claims were dismissed in favor of the employer/ERISA plan administrator El Paso Energy Corporation ("El Paso") and ERISA plan manager/adjudicator Liberty Life Insurance Company of Boston ("Liberty").

---

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

Gore raises the following issues on appeal: (1) whether the district court erred in dismissing Gore's claim of breach of fiduciary duty against El Paso, pursuant to 29 U.S.C. § 1132(a)(3); and (2) whether the district court erred in disposing of Gore's claim for civil penalties against El Paso, pursuant to 29 U.S.C. § 1132(c). Gore does not appeal the district court's affirmance of Liberty's denial of Gore's claim for long-term disability benefits.

For the reasons that the follow, we AFFIRM the district court's dismissal of Gore's claim for civil penalties but REVERSE the district court's dismissal of Gore's claim of breach of fiduciary duty against El Paso and REMAND the case for further proceedings consistent with this ruling.

## I.        *Factual and Procedural History*

Plaintiff John T. Gore began working for Tennessee Gas Pipeline Company ("Tennessee Gas"), a subsidiary of Tenneco, Inc. ("Tenneco") in 1974. As an employee, Gore participated in Tenneco's long-term disability ("LTD") plan, which provided for "own occupation" disability benefits for a period of 24 months and "any occupation" disability benefits thereafter until the age of 65.

In 1996, El Paso acquired Tennessee Gas. Shortly thereafter, El Paso's area manager and HR manager met with El Paso's new employees from former Tenneco Gas. The employees were told that their benefits at El Paso would remain the same as they were at Tenneco. According to Gore, at no time during his employment with El Paso did he receive a summary plan description, nor was he informed of any changes to the plan.

Tenneco's LTD plan was in effect until December 31, 1997. On January 1, 1998, a new Group Disability or Income Policy began to cover the company's employees, including Gore. This new policy, governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, is the subject of this dispute.

Under the terms of the new policy, Liberty was required to both manage and adjudicate claims for El Paso. The plan itself was different from the previous plan in that it provided for "own occupation" disability benefits for only 12 months after an elimination period, as opposed to the 24 months of the Tenneco Plan. After 12 months under the new plan, an employee would be required to demonstrate that his injury prevented him from working "any occupation" for which he is qualified.

In late November 2000, Gore was injured in a natural gas explosion at the El Paso facility and has not worked there since. In June of 2001, Gore filed a claim for LTD benefits with Liberty. Liberty retroactively extended disability benefits to him from May 21, 2001 to May 20, 2002 because it was determined that he was unable to perform his "own occupation."

In October 2001, a vocational case manager conducted a Transferable Skills Analysis to determine whether occupational alternatives were available to Gore, based on his medical/functional and education/vocational capacities. The case manager determined that occupational alternatives were available to Gore within the petroleum industry involving either sedentary work or work light in physical demand. These occupational alternatives were Control Panel Operator, Dispatcher, or Title Clerk.

In December 2001, a physician conducted an Independent Medical Examination of Gore in connection with his Worker's Compensation claims. The physician recommended that Gore have certain restrictions placed on his work activities. This report was forwarded to another physician who essentially agreed with its evaluation of Gore's condition.

In February 2002, Liberty informed Gore that in order to remain eligible for benefits after May 21, 2002, Gore would have to meet the "any occupation" standard.

That next month, Liberty ordered a Labor Market Survey to be conducted concerning the three occupational alternatives identified by the vocational case manager. The survey was sent to nine different employers in Texas and Louisiana concerning nine available positions. Eight of the nine employers determined, based on Gore's restrictions, that Gore was qualified for the specified job.

In April 2002, Gore submitted his own Vocational Evaluation based on his medical records, academic testing, and a clinical interview with Gore. This personal Vocational Evaluation determined that the types of jobs that Gore could perform were not available in Tennessee.

In May 2002, Liberty notified Gore by letter that it had denied his claim for LTD because he did not meet El Paso's definition of disability. The denial was based on the finding that other occupational alternatives were available to Gore accounting for his restrictions, limitations, and transferable skills in the petroleum industry.

Gore appealed and requested to "review pertinent claim file documents upon which the denial of benefits was based." After securing an attorney, the attorney requested from Liberty: (1) the administrative record of Gore's claim; (2) a written explanation of the claims and appeals procedures applicable to Gore's claim; (3) an additional 90 days to submit proof; and (4) a written explanation of Liberty's reasons for relying on the Labor Market Survey.

Liberty denied the appeal on July 23, 2002 by letter. The letter also noted that Mr. Gore had already been forwarded a copy of both the administrative file and a copy of El Paso's LTD Group Contract. As a result, Liberty denied his request for a copy.

In October of 2003, Gore filed a complaint against both Liberty and El Paso in the United States District Court for the Middle District of Tennessee asserting wrongful denial of long-term disability benefits under El Paso's LTD plan, pursuant to 29 U.S.C. § 1132(a)(1)(B). Gore also asserted a claim for civil penalties due to defendants' failure or refusal to provide certain documents within 30 days after written request. Gore finally asserted that both Liberty and El Paso breached their fiduciary duties and requested "other appropriate equitable relief to redress violations of the Plan and/or ERISA," pursuant to 29 U.S.C. § 1132(a)(3). In addition to "benefits" and "civil penalty" damages, Gore requested an injunction, fees and costs.

The parties conferred, drafted, and submitted a proposed Initial Case Management Order that the district court then entered in February 2003. The order structured the case in two stages. The first stage concerned Gore's claims for wrongful denial of benefits, while the second stage dealt with both Gore's breach of fiduciary duty claims and civil penalty claims.

In early 2003, Gore moved to supplement the administrative record. In May 2003, the district court granted Gore's Motion to Supplement the Administrative Record with the July 23, 2002 medical examination report and remanded the case to Liberty for reconsideration of Gore's claim for LTD benefits.

Liberty then commissioned a peer review of Gore's medical files, which came to the consensus that Gore was at the time "capably and gainfully employed of being fit for full duty" of "light to medium duty" with certain restrictions and limitations. After the peer review, Liberty sought an updated Vocational Review, which determined that Gore could earn between $24,000 and $42,000 a year for the previously identified alternative occupations in the Tennessee area and roughly the same for the national economy.

In December 2003, Liberty determined that Gore's medical restrictions and limitations "do not prevent him from returning to… alternative sedentary to light occupations." Thus, Liberty again determined that Gore did not meet the policy's definition of disability.

After the case was reopened by the district court, a second Case Management Order was entered in March 2004. The only relevant change was that the parties agreed to include both the benefits and civil penalties claims in the first stage of the litigation, leaving only the breach of fiduciary duties claims under § 1132(a)(3) for the second stage. This Second Case Management Order discussed the relationship between Gore's claim for benefits and breach of fiduciary duties claim:

> To the extent that the Order ruling on Plaintiff's and Liberty's cross motions for judgment awards full benefits to Plaintiff from the date of curtailment of benefit payments through his attainment of 65, the second stage of the case becomes moot.

Once the discovery for the first stage of the litigation was complete, Liberty moved for summary judgment on Gore's claim for civil penalties. Gore moved for partial summary judgment on his civil penalty claims.

In December 2004, the district court entered an order denying Gore's motion and dismissed his claims for benefits and civil penalties. The court determined that El Paso, not Liberty, was the Plan Administrator. Though the Policy itself was silent as to the Plan Administrator, the 2000 Long Term Disability Plan Summary Description stated that El Paso was the Plan Administrator. Furthermore, the parties stipulated that "El Paso is the 'administrator' of the LTD Plan" within the meaning of ERISA in the Initial Case Management Order. In addition, the district court further found that Gore requested information about the plan from Liberty only. Relying on this circuit's case law, the district court declined in its discretion to impose statutory penalties against El Paso.

In early December 2004, the district court ordered another case management conference and required the parties to confer, draft, and submit position statements on the status of the case. In January 2005, the district court ordered Gore to file a brief "that supports the survival of his fiduciary duty claim after the Court's prior ruling." Gore submitted his brief and El Paso responded.

In October 2005, the district court dismissed Gore's § 1132(a)(3) claim for breach of fiduciary duty and request for equitable relief. The district court held:

> In light of these facts [*i.e.,* the fact that § 1132(a)(1)(B) provided an adequate remedy], as well as the aforementioned [Gore's] admissions, the court finds that the plaintiff's remaining claim against El Paso for breach of fiduciary duty is nothing more than a repackaged denial of benefits claim, precisely the type of claim expressly rejected by the Supreme Court in *Varity*, and the Sixth Circuit in *Wilkins*. Equitable relief under § 1132(a)(3) is, therefore, not "appropriate," and Gore's breach of fiduciary duty claims against El Paso must be dismissed.

The district court also rejected Gore's equitable estoppel argument on the grounds that it was not preserved, calling it an "eleventh-hour claim." As a result, the case was dismissed.

Gore appealed raising two separate issues: first, whether the district court erred by denying his claim against El Paso for equitable relief; and second, whether the district court erred by denying his claim for civil penalties against El Paso. Gore has subsequently settled his claims against Liberty, and Liberty has been dismissed from the appeal.

## II.     *Standard of Review*

The district court in its orders dismissing the claims for civil penalties and breach of fiduciary duty accepted "all the allegations pleaded in the Complaint as true." The district court then dismissed the claims presumably under Federal Rule of Civil Procedure 12(b)(6). We review *de novo* the district court's dismissal of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Hill v. Blue Cross and Blue Shield of Michigan,* 409 F.3d 710, 716 (6th Cir. 2005). The district court's order will not be affirmed unless it appears beyond doubt that the plaintiff "can prove no set of facts in support of his claims that would entitle him to relief." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452-53 (6th Cir. 2003)(quotation and citation omitted).[1]

We review the district court's decision on the imposition of penalties under § 1132(c) for abuse of discretion. *Hiney Printing Co. v. Brantner*, 243 F.3d 956, 960 (6th Cir. 2001) (citing *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994).

## III.     *Fiduciary-Duty Claims as "Repackaged Individual Benefits Claims"*

Gore contends that he is entitled to equitable relief for El Paso's breach of fiduciary duty, pursuant to 29 U.S.C. § 1132(a)(3). Specifically, Gore claims that El Paso breached its duty by "misrepresenting the duration of his 'own occupation' long term disability benefits," citing *Varity Corp. v. Howe*, 516 U.S. 489 (1996), for support. As a result of this alleged breach, Gore argues that he should be awarded compensatory damages in the form of one year's worth of compensation, *i.e.*, the difference between Tenneco's LTD plan's "own occupation" benefits (2 years) and El Paso's LTD plan's "own occupation" benefits (1 year).

Section § 502(a) of ERISA, 29 U.S.C. § 1132(a), provides that:

A civil action may be brought-
(1) by a participant or beneficiary
        (A) for the relief provided in subsection (c) of this section [providing for liquidated damages for failure to provide certain information on request], or
        (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
(3) by a participant, beneficiary, or fiduciary
        (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
        (B) to obtain other appropriate equitable relief
                (i) to dress such violations or
                (ii) to enforce any provisions of this subchapter or the terms of the plan;…

---

[1] Gore argues that the district court *sua sponte* granted summary judgment on his breach of fiduciary duties claim because the parties briefed the legal, but not the factual, issues relating to the claim. The district court's order requesting briefing on the issue did not preclude facts from being argued. The district court took all of Plaintiff's allegations pled in the Complaint as true. Finally, the issue itself was a purely legal question based on the analysis and interpretation of law rather than the facts of the case. The Court reviews the district court's dismissal of Gore's breach of fiduciary duties claims *de novo*.

The district court determined that Plaintiff was barred from pursuing equitable relief under the catch-all provision of § 1132(a)(3) because Gore's breach of fiduciary duty claim "was nothing more than a repackaged denial of benefits claim," similar to the type warned about in *Varity,* 516 U.S. at 515, and determined to be barred in *Wilkins v. Babtist Healthcare System Inc.*, 150 F.3d 609, 615 (6th Cir. 1998).

In *Varity*, an employer reorganized, combining some of its divisions into a new subsidiary corporation. 516 U.S. at 493. The employer also administered its employees' original welfare benefit plan. *Id*. During the reconfiguration, the employer convinced many of the employees to transfer their benefits plan to a plan offered by the new subsidiary, assuring them that the benefits would remain secure. *Id*. at 494. However, the employer was aware that the new entity was insolvent from its inception. *Id*. At the end of the corporation's second year, the new entity went into receivership, resulting in the loss of the employees' nonpension benefits. *Id*. A group of those employees brought suit seeking the benefits they would have been paid had they not transferred to the new entity's plan. *Id*.

Agreeing with the district court and the Eighth Circuit, the Supreme Court found that ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), gave the employees a right to appropriate equitable relief to redress the harm that the original deception had caused them individually. *Id*. at 515. The Supreme Court determined that while there is a remedy for a breach of fiduciary duty related to the interpretation of plan documents and payment of claims under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), the remedy for "other breaches of other sorts of fiduciary obligation" may be sought under § 1132(a)(3).

> ERISA specifically provides a remedy for breaches of fiduciary duty with respect to interpretation of plan documents and the payment of claims, one that is outside the framework of the second subsection and cross-referenced [§ 1109], and one that runs directly to the injured beneficiary [§ 1132(a)(1)(B)]. Why should we not conclude that Congress provided yet other remedies for yet other breaches of other sorts of fiduciary obligation in another, "catchall" remedial section?

*Id*. at 512 (internal citations omitted). The Supreme Court concluded that it "should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief would normally not be appropriate." *Id*. at 515. The plaintiffs in *Varity* qualified for this catchall because they had no remedy under § 1132(a)(1)(B) or § 1132(a)(2).

With this guidance, the Sixth Circuit in *Wilkins v. Baptist Healthcare System Inc.*, 150 F.3d 609 (6th Cir. 1998), first addressed § 1132(a)(3) as interpreted by *Varity*. In *Wilkins*, the plaintiff contended that he was entitled to compensatory damages, pursuant to 29 U.S.C. § 1132(a)(3), based on the defendant's breach of fiduciary duty to act solely in Wilkins' interest for the exclusive purpose of providing benefits to him. *Id*. at 615. This Court interpreted *Varity* as clearly limiting "the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies." *Id*. (citing *Varity*, 516 U.S. at 512). Because § 1132(a)(1)(B) provided a remedy for Wilkins' alleged injury and allowed him to bring a lawsuit to challenge the Plan Administrator's denial of benefits, a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3) was not appropriate. *Id*. In further distinguishing Wilkins from the plaintiffs in *Varity*, this Court noted that the employer-insurer in *Varity* misled the employees, causing them to lose their non-pension benefits. *Id*.

Several subsequent Sixth Circuit decisions that have addressed § 1132(a)(3) claims suggest that a plaintiff who is permitted to bring a § 1132(a)(1)(B) claim for denial of benefits and does so is under no circumstance permitted to also bring a § 1132(a)(3) claim. *See Marks v. Newcourt*, 342

F.3d 444, 454 (6th Cir. 2003); *Julia v. Bridgestone/Firestone, Inc.*, 101 F. App'x 27, 30 (6th Cir. 2004); *Putney v. Medical Mutual of Ohio*, 111 F. App'x 803, 806 (6th Cir. 2005).

This misunderstanding was dispelled by this Court's decision in *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710 (6th Cir. 2005). The *Hill* decision clarified that under some circumstances an ERISA plaintiff may simultaneously bring claims under both § 1132(a)(1)(B) and § 1132(a)(3). *Id.* at 718. In *Hill*, participants in an employer-sponsored health plan filed a putative class action against the plan's third party administrator. *Id.* at 715. The suit alleged that the third party administrator's handling of the plaintiffs' claims for emergency medical treatment expenses resulted in the wrongful denial of benefits, pursuant to § 1132(a)(1)(B), and constituted a breach of the administrator's fiduciary duties to the program participants, pursuant to § 1132(a)(3). *Id.* at 715-16. Relying on *Wilkins* and its progeny, the district court dismissed the breach of fiduciary duty claim as a repackaged claim for individual benefits. The Sixth Circuit reversed the district court, determining that *Wilkins* did not apply:

> In this case, an award of benefits to a particular Program participant based on an improperly denied claim for emergency-medical-treatment expenses will not change the fact that BCBSM is using an allegedly improper methodology for handling all of the Program's emergency-medical-treatment claims. Only injunctive relief of the type available under § 1132(a)(3) will provide the complete relief sought by Plaintiffs by requiring BCBSM to alter the manner in which it administers all the Program's claims for emergency-medical-treatment expenses.

*Id.* at 718. Because an award of individual benefits pursuant to § 1132(a)(1)(B) could not provide an adequate remedy for the alleged injury to the plaintiffs caused by the breach of fiduciary duties, outright dismissal of the plaintiffs' § 1132(a)(3) claims was in error. *Id.*

In reviewing the Sixth Circuit's jurisprudence relating to *Varity*, the district court in this case determined that the line of cases stood for the proposition that dismissal of the § 1132(a)(3) claim is appropriate

> only if the alleged injury to the plaintiff may be completely remedied under the asserted § 1132(a)(1)(B) claim for benefits, or any other § 1132 provision for that matter. The availability of an adequate remedy for the alleged injury, rather than the actual substance of the claim, was the very essence of the Supreme Court's concern in *Varity*.

*Gore v. El Paso Energy Corp. Long Term Disability Plan*, 2005 U.S. Dist. LEXIS 26591, * 20 (M.D. Tenn. 2005).

Relying on Gore's admission that the injury caused by El Paso's alleged breach of fiduciary duties may have been adequately remedied under his § 1132(a)(1)(B) denial of benefits claim and because the parties agreed to structure the case in two stages as a result, the district court concluded that Gore was attempting a second bite of the apple.

> [P]roceeding with stage two is inappropriate, because, as the plaintiff himself admits, 29 U.S.C. § 1132(a)(1)(B), of which Gore has availed himself, provided an adequate remedy covering the full extent of his alleged injuries.

*Id.* at *21.

El Paso contends that this case falls under the *Wilkins* line of cases, as opposed to the *Hill* and *Varity* decisions. This Court disagrees. An examination of the specifics of Gore's alleged injuries will show why.

In his complaint, Gore has alleged two separate and distinct injuries. First, Gore alleges that Liberty's "any occupation" determination was wrongly decided and that as a result he is entitled to LTD benefits. Second, he alleges that even if he is not entitled to the "any occupation" determination, he should receive "own occupation" benefits for two years rather than one based on El Paso's misrepresentation. The district court is correct when it states that 29 U.S.C. § 1132(a)(1)(B) provides Gore a remedy for Liberty's denial of benefits claim under the "any occupation" determination. But neither 29 U.S.C. § 1132(a)(1)(B) nor 29 U.S.C. § 1132(a)(2) provides Gore a remedy for El Paso's alleged misrepresentation.

Had Gore alleged that Liberty breached its fiduciary duty, pursuant to § 1132(a)(3), for wrongful denial of benefits, under *Wilkins* the claim would be duplicative of his § 1132(a)(1)(B) claim. Gore cannot claim that Liberty breached its fiduciary duty pursuant to § 1132(a)(1)(B) or § 1132(a)(3),for misrepresenting the scope of the policy coverage because Gore alleges that El Paso, not Liberty, misrepresented the scope of the policy.

The injury of which Gore complains is different than both of these. Instead, Gore complains that El Paso breached its fiduciary duty by leading Gore to believe that he had two years of "own occupation" benefits. Assuming that he could not seek relief from El Paso pursuant to § 1132(a)(1)(B) or § 1132(a)(2) (*see discussion supra*), Gore's only remedy against El Paso would be under § 1132(a)(3). The two claims are distinct and unrelated to each other.

The reason why the district court and the Defendant confuse Gore's argument is because the remedy available to Gore if he had succeeded in his "any occupation" claim would have rendered the "own occupation" misrepresentation moot. Both the district court and the Defendant believe that this settles the issue. But an examination of the reason why Gore's § 1132(a)(3) misrepresentation claim against El Paso would be moot is necessary.

If Gore received LTD benefits under the "any occupation" coverage, Gore would no longer suffer any injury from El Paso's misrepresentation of the "own occupation" benefit. Gore would receive payment for the second year regardless of whether El Paso should have told him that the "own occupation" benefits only lasted a year. However, the opposite result is not true. When Gore did not receive the "any occupation" wages, his misrepresentation claim was not moot because his injury from the misrepresentation was not eliminated.

That Gore's "own occupation" injury would be rendered moot if remedied by the "any occupation" determination does not mean that the Plaintiff's alleged injury is "a repackaged denial of benefits claim." The fact that Plaintiff's claim for an equitable remedy "could have been" resolved if his § 1132(a)(1)(B) claim was resolved in his favor, does not mean that his claim is the same as the one barred in *Wilkins*.

As in *Variety*, an award of benefits to Gore under the "any occupation" examination would not have changed the alleged fact that El Paso misrepresented the policy's coverage to Gore. The award of benefits would have merely made the need for relief in the form of injunction or damages moot, but it would not have addressed the question of whether Gore was entitled to another year of "own occupation" benefits.

The question that remains is whether the claim for breach of fiduciary duty based on El Paso's misrepresentation, pursuant to § 1132(a)(3), is more properly construed as a claim for equitable estoppel/misrepresentation under § 1132(a)(1)(B). The district court refused to substantively address this question because it believed that the claim was an eleventh-hour claim. The district court did however note the confusion about whether such a claim may be properly asserted under § 1132(a)(1)(B).

In the unpublished case *Julia v. Bridgestone/Firestone*, the plaintiff sought recovery of benefits according to the plan terms as they were represented to her by the defendant rather than according to the actual terms of the plan. 101 F. App'x at 31. The question raised was whether the action should have been brought under § 1132(a)(1)(B), rather than as an action for equitable relief under § 1132(a)(3). *Id*. at 30-32. After surveying the legal landscape, this Court remarked that "[s]ome courts have construed § 1132(a)(1)(B) strictly and refused recovery under that section." *Id*. at 30 (citing *Flint v. ABB, Inc.*, 337 F.3d 1326, 1329-30 (11th Cir. 2003)). However, because the plaintiff could not show she reasonably relied on Bridgestone's misrepresentation, the *Julia* Court declined to "wade too deeply into the morass" of whether the plaintiff properly sought to recover under § 1132(a)(1)(B) and estop the defendant from deviating from its misrepresentation to the plaintiff, or sought equitable estoppel under § 1132(a)(3) for breach of fiduciary duty. *Id*. at 31.

A similar predicament is present here since Plaintiff "is not seeking to recover benefits due under the terms of the plan." *Id.* Yet, we need not wade too deeply into this morass either. "Unless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits." *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988) (citation omitted), *cert. denied*, 488 U.S. 826 (1988). El Paso cannot be sued under 29 U.S.C. § 1132(a)(1)(B) because Liberty was solely responsible for the denial of benefits. Moreover, the policy clearly states that Liberty is the proper party in a denial of benefits case. The question would be different had Gore brought his misrepresentation claim under 29 U.S.C. § 1132(a)(3) for breach of fiduciary duty based on a misrepresentation by Liberty, the fiduciary who controlled the claims. However, in this case the § 1132(a)(3) action based on misrepresentation was brought against a fiduciary, El Paso, who did not control the claims. Thus, Gore properly brought his claim of misrepresentation under § 1132(a)(3), since§ 1132(a)(1)(B) requires a beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," and it is undisputed that Gore is not entitled to the benefit under the terms of the plan.

It should also be noted that this Court in *Marks* acknowledged in *dicta* that this circuit will recognize a § 1132(a)(3) claim as separate from a § 1132(a)(1)(B) claim even against the same fiduciary. "Even if Marks could bring a breach-of-fiduciary-duty claim, we have recognized such claims only where the misrepresentation in question involves the availability or extent of plan benefits." *Marks*, 342 F.3d at 454 n.2 (citations omitted).

In each case where this circuit has found that a plaintiff's § 1132(a)(3) claim of breach of fiduciary duty is merely a repackaged § 1132(a)(1)(B) claim, the claims could have been brought under § 1132(a)(1)(B). Here, Gore's claim of breach of fiduciary duty could not have been characterized as a denial of benefits claim, thus the district court's dismissal of Plaintiff's § 1132(a)(3) claim was in error. The ruling must be reversed and the case remanded for further proceedings.[2]

## IV.    *Civil Penalties*

ERISA imposes particular duties on a plan administrator to provide information to a plan participant. *See* 29 U.S.C. § 1024(b)(4). Specifically, a plan administrator shall

> upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any

---

[2] Plaintiff notes that the appropriate equitable relief under § 1132(a)(3) could come in the form of five different equitable remedies: 1) Reformation; 2) Rescission; 3) Reinstatement; 4) Equitable Estoppel; and 5) Promissory Estoppel. At this point, we need not determine what remedy is required to address the possible misrepresentation since the district court did not determine whether any misrepresentation in fact took place.

terminal report, the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated.

*Id*. An administrator who fails to comply within thirty days with a request for information from a plan participant

> may in the court's discretion be personally liable to such participant… in the amount of $100 a day from the date of such failure or refusal, and the court may in its discretion order such relief as it deems proper.

29 U.S.C. § 1132(c). ERISA defines the plan administrator as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C.§ 1002(16)(A).

"It is well established that only plan administrators are liable for statutory penalties under § 1132(c)." *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 584 (6th Cir. 2002)(citing *Hiney*, 243 F.3d at 960; *Vanderklok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 618 (6th Cir. 1992). In *Hiney*, the Sixth Circuit reiterated that it was clear that a plan administrator cannot be liable for statutory penalies if the request for information was not directed to it. 243 F.3d at 961.

The court in *Hiney* also rejected an agency theory when confronting a claim for civil penalties brought pursuant to § 1132(c) for violations of § 1024(b). The Master Document Plan of Hiney Printing Company stated that the Plan was to be administered by Administrative Service Consultants. *Id*. at 958. The plaintiff requested plan information from Administrative Service Consultants but did not receive the information. *Id*. The plaintiff claimed that Hiney Printing was liable for Administrative Service Consultants' failure to produce the requested information because Administrative Service Consultants was the "*de facto*" administrator, without citing any case law. *Id*. at 960. This Court stated that "[t]he law in this Circuit is clear that 'only a plan administrator can be held liable under section § 1132(c).'" *Id*. at 961 (quoting *Vanderklok*, 956 F.2d at 617). The Court found that given "the lack of precedent for expanding the statutory definition of the plan administrator under ERISA, we find that the district court did not abuse its discretion in refusing to impose statutory penalties on Hiney Printing." *Id.*

Plaintiff argues that the district court erred in determining that El Paso was the exclusive administrator of the plan. The parties in the initial case management order stipulated that "El Paso is the 'administrator' of the LTD plan… and that El Paso has delegated all duties of the administrator to Liberty." This is also supported by the LTD Plan's Summary Plan Description. Although the Plan itself did not designate the plan administrator, the district court relied on the stipulation as well as the Plan's Summary to find that El Paso was the administrator of the plan.

Gore argues this Court changed course from *Hiney* in *Minadeo v. ICI Paints*, 398 F.3d 751 (6th Cir. 2005). In *Minadeo*, an ERISA claimant had addressed document requests to her employer as opposed to her plan administrator, the Pension Committee. *Id*. at 755-56. The Sixth Circuit remanded the case to the lower court because the record did not sufficiently explain the relationship between the employer and the plan administrator for it to determine liability. *Id*. at 759. Unlike here, the evidence available to the Sixth Circuit in *Minadeo* suggested that the employer participated in the administration of benefits under the pension plan. *Id*. Moreover, the Court did not renounce but instead reiterated the holding of both *Hiney* and *Vanderklok*. *Id*.

Relying upon the case law and the fact that Gore requested plan materials from Liberty even though El Paso was the exclusive plan administrator according to both the Summary Plan Description and the parties' stipulation in the initial case management order, we conclude the district court did not abuse its discretion when it declined to impose civil penalties pursuant to § 1132(c).

**V.** *Conclusion*

The decision of the lower court is REVERSED IN PART and AFFIRMED IN PART. The case shall be REMANDED and Plaintiff's § 1132(a)(3) claim of breach of fiduciary duty against El Paso shall be REINSTATED. The district court's decision dismissing Plaintiff's claim for civil penalties against El Paso for failure to provide information to a plan participant, pursuant to § 1024(b)(4) and § 1132(c) is AFFIRMED.