McKEAGUE, Circuit Judge,
dissenting.
The majority has taken an unprecedented and extraordinary step to expand the scope of ERISA coverage. The disgorgement of profits undermines ERISA’s remedial scheme and grants the plaintiff an astonishing $3,797,867.92 windfall under the catchall provision in § 502(a)(3).[1] As this expansion of ERISA is contrary to clear Supreme Court and Sixth Circuit precedent, I dissent.
At its core, ERISA is a remedial statute. It does not seek to punish violators, but rather, attempts to place “the plaintiff in the position he or she would have occupied but for the defendant’s wrongdoing.” See Ford v. Uniroyal Pension Plan, 154 F.3d 613, 618 (6th Cir.1998). As the Second Circuit aptly put it, “[t]he aim of ERISA is to make the plaintiffs whole, but not to give them a windfall.” Henry v. Champlain Enters., Inc., 445 F.3d 610, 624 (2d Cir.2006) (internal quotation marks omitted). The key inquiry, therefore, in determining how to make the plaintiff whole, requires identification of the nature of the injury suffered.[2] In a wrongful denial of benefits case, like this one, every time there is a denial of benefits, there will necessarily be a withholding of the benefits. As even plaintiff Rochow has acknowledged, the denial is the injury, and the withholding is an ancillary effect. Together they comprise a single injury that must be remedied.
Plaintiff was made whole when he was paid his disability benefits and attorney’s fees. If not, an award of prejudgment interest certainly would have made him whole. See Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan, 711 F.3d 675, 685-87 (6th Cir.2013) (indicating that prejudgment interest effectively prevents unjust enrichment in an ERISA benefits case, but noting that such interest must not be excessive). Allowing Rochow to recover disgorged profits, in addition to denied benefits, results in an improper repackaging of the benefits claims. Put differently, it results in a second recovery for the same injury. Such overcompensation contravenes ERISA’s basic purpose.
Both the Supreme Court and this Circuit have interpreted ERISA to prevent
*432 such double recoveries. This is precisely why equitable relief under § 502(a)(3) has been allowed in only three circumstances: (1) where § 502(a)(1)(B) does not already provide a remedy to the plaintiff; (2) where an injunction under § 502(a)(3) would remedy future mishandling of claims and an award of benefits under § 502(a)(1)(B) would remedy past wrongful conduct; and (3) where the § 502(a)(3) claim was distinct and independent from the § 502(a)(1)(B) claim, but even then, the plaintiff was permitted to recover under only one of the two theories — he could not recover under both. Notice what is not allowed: simply repackaging the § 502(a)(1)(B) claim as an equitable claim under § 502(a)(3) and thereby obtaining relief for the same injury under both provisions. The disgorgement award granted by the district court and upheld by the majority, however, does exactly this.
The majority’s ruling works a fundamental change in the interplay between § 502(a)(1)(B) and § 502(a)(3). This is not authorized by Supreme Court precedent. In Varity Corp. v. Howe, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the Supreme Court allowed a group of plaintiffs, who were unable to bring a claim under § 502(a)(1)(B), to bring suit for breach of fiduciary duty under § 502(a)(3). As the Court explained, Section 502(a)(3) “functions as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy.” Id. at 513, 116 S.Ct. 1065. Importantly, however, the Court limited this expansion of ERISA coverage by noting “where Congress elsewhere provided adequate relief for a beneficiary’s injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate.” Id. at 515, 116 S.Ct. 1065 (emphasis added) (internal quotation marks omitted).
Varity emphasizes the adequacy of the relief for the beneficiary’s injury, not the nature of the defendant’s wrongdoing. By focusing on disgorgement of profits, the majority turns the analysis on its head. Disgorgement addresses whether the defendant has wrongfully gained something, not whether the plaintiff has been made whole. This pivot from the plaintiffs injuries to the defendant’s wrongdoing directly contravenes the approach laid out in Varity. Moreover, the majority’s suggestion that such an approach is permitted because “redress” could be interpreted to mean “to exact reparation for: avenge” is directly at odds with the Court’s admonition that § 502(a)(3) does not cover punitive damages. Id. at 509, 116 S.Ct. 1065 (citing Mertens v. Hewitt Assoc., 508 U.S. 248, 255, 256-58, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)).
Varity also indicates that equitable relief is not normally appropriate where Congress elsewhere provides adequate relief for a beneficiary’s injury. If an arbitrary and capricious denial of benefits implicates a breach of fiduciary duty entitling a plaintiff to disgorgement of profits, then equitable relief becomes potentially available whenever a disability-benefit denial is reversed under an arbitrary and capricious standard of review.[3] Such a result flies in the face of the Court’s decision in Varity. It converts the exception into the rule, the “safety net” into a first-line of attack. Perhaps this is why plaintiffs and amici do not cite to any ERISA case allowing a *433 disgorgement of profits, .other than disgorgement in the form of prejudgment interest.
This reading of Varity as controlling the relationship between § 502(a)(1)(B) and § 502(a)(3) and as limiting the application of § 502(a)(3) is clearly expressed in Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609 (6th Cir.1998). There, Wilkins applied for long-term disability benefits, and after plan administrators denied his claim, Wilkins sued alleging he was entitled to benefits under § 502(a)(1)(B) and to equitable relief under §.502(a)(3) based upon breach of fiduciary duty. This court denied relief under § 502(a)(3) stating:
Because § 1132(a)(1)(B) provides a remedy for Wilkins’s alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator’s denial of. benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to [§ 502(a)(3),].
Id. at 615. Just like the plaintiff in Wilkins, Rochow’s entitlement to relief under the catchall provision should be deemed barred as he obtained adequate remedy under § 502(a)(1)(B).
The majority, nonetheless, points to Hill v. Blue Cross and Blue Shield of Michigan, 409 F.3d 710 (6th Cir.2005), which recognized an exception to - Wilkins. In Hill, the plaintiffs brought a class-action lawsuit seeking individual relief for denied benefits under § 502(a)(1)(B) and plan-wide injunctive relief under § 502(a)(3) based upon defendant’s alleged breach of its fiduciary duty. The district court dismissed the § 502(a)(3) claim finding that “these claims were merely repackaged claims for individual benefits and did not constitute actual fiduciary-duty claims.” Id. at 717. This court reversed. Whereas Wilkins involved the rejection of fiduciary-
duty claims on the basis that they were actually disguised individual-benefits claims, in Hill the need for relief under the catchall provision arose out of a defect in plan-wide, claim handling procedures. “The award of benefits to a particular [plaintiff] based on an improperly denied claim for emergency-medical-treatment expenses will not change the fact that [defendant] is using an allegedly improper methodology for handling ... claims.” Id. at 718. To remedy this injury, the court permitted injunctive relief, not an additional award of monetary damages. Thus, the Hill court permitted an exception to Varity and Wilkins because “[o]nly in-junctive relief of the type available under § 1132(a)(3) [would] provide the complete relief sought by Plaintiffs by requiring [Defendants] to alter the manner in which it administers all the Program’s claims-” Id. at 718 (emphasis added). Again, as in Varity, the primary purpose of ERISA was satisfied — providing an adequate remedy, to make the plaintiffs whole.
The present case does not fall within the Hill exception to Varity and Wilkins. Hill distinguished between the denial of individual claims and plan-wide mishandling of claims. These constituted two distinct injuries. Section 502(a)(1)(B) provided relief for the denial of the Hill plaintiffs individual benefits, and § 502(a)(3) remedied the systemic plan-wide problems that posed a potential for future injury. Contrast Hill with the present case where the only injury is the denial of benefits and the resultant withholding of those benefits. These injuries are not actually distinct, they have no plan-wide repercussions, and they are not directly preventing future malfeasance. Furthermore; the majority has not provided injunctive relief, but rather has granted a substantial duplicative pay-out. All of this leads to the conclusion that the majority has improperly applied the narrow ex *434 ception articulated in Hill. There is no basis for the repackaging of the denial of benefits claim as a theory warranting equitable relief for the same injury.
The majority also invokes Gore v. El Paso Energy Corp. Long Term Disability Plan, 477 F.3d 833, 840-41 (6th Cir.2007). The contrast between this case and Gore is stark. In Gore, the plaintiff alleged wrongful denial of benefits under § 502(a)(1)(B) and also sought equitable relief under § 502(a)(3). The court allowed the plaintiff to proceed under the two theories only because the claims were “distinct and unrelated to each other.” Id. at 841. The disability-benefits claim addressed whether plaintiff was wrongfully denied benefits by the plan administrators. The equitable-relief claim turned upon misrepresentations made by the plaintiffs employer as to how long he would be covered under a different plan provision. This court allowed both claims to proceed because the claims involved different defendants and different injuries. Importantly, however, the court expressly denied recovery on both claims. The plaintiff could recover under the equitable-relief theory only if he lost on the disability-benefits theory. Again, this court limited recovery to an adequate remedy. See id. at 841.
Unlike Gore, this case presents two related, non-distinct claims asserted against the same defendant. Moreover, the district court actually awarded recovery under both § 502(a)(3) and § 502(a)(1)(B). Finally, whereas in Gore the goal was to give the plaintiff -an adequate remedy and not more, the present case grants Rochow a multi-million dollar windfall, in addition to his relief under § 502(a)(1)(B). Once Rochow recovered under § 502(a)(1)(B), Gore indicates that his duplicative request for catchall relief should have been denied.
The majority derives its final support from Parke v. First Reliance Standard Life Insurance Co., 368 F.3d 999 (8th Cir. 2003). The Eighth Circuit in Parke required a business under § 502(a)(3) “to disgorge any profits made by breaching” its fiduciary duty. Id. at 1008. Because “interest is an appropriate measure of the profits made by a defendant who breaches its fiduciary duty,” the court awarded prejudgment interest. Id. at 1009. While this dicta is relatively broad, the court’s actual holding is far narrower, focusing entirely on the issue of interest, not profits. “In sum, we hold that an award of interest on wrongfully delayed benefits remains permissible under § 1132(a)(3)(B)....” Id. (emphasis added). It should also be noted that the total interest disgorged in Parke was less than $700. Thus, Parke stands for the proposition that prejudgment interest may be afforded as an appropriate equitable relief under § 502(a)(3) to make the plaintiff whole. Id. at 1009 (“Interest is, in many respects, the only way to account for this gain and therefore is an appropriate measure of the extent to which [the insurer] was unjustly enriched.” (emphasis added)). The notion that Parke legitimately supports a $3.7 million payout of purported “profits,” irrespective of its relation to plaintiffs injury, not only is contrary to Supreme Court and Sixth Circuit precedent, but is simply without basis.[4]
*435 The cases discussed above lead to the conclusion that a person is entitled to § 502(a)(3) relief in addition to § 502(a)(1)(B) relief only when the catchall would remedy a distinct injury. As Ro-chow was fully compensated and made whole by an award under § 502(a)(1)(B), and as he sustained only one injury — the denial of benefits — there was no' need to resort to the catchall provision. Additional equitable relief, particularly relief as excessive as this, punishes the defendant and grants the plaintiff a windfall that is inconsistent with the remedial nature of ERISA and Supreme Court and Sixth Circuit precedent.
Furthermore, disgorgement under the circumstances of this case fundamentally alters how denied disability-benefits claims are litigated, forcing district courts to wrestle with complex calculations of profits [5] and raising the specter that any claimant who was arbitrarily and capriciously denied benefits would have a viable claim for disgorgement. “A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.” Perry v. Simplicity Eng’g, 900 F.2d 963, 967 (6th Cir.1990). The majority’s approach is completely counter to this underlying objective. It increases the cost and complexity of ERISA litigation, resulting in more expert testimony, discovery motions, and evidentiary hearings, which inevitably will force the district court “to consider evidence from both parties that was not presented to the plan administrator [which] would seriously impair the achievement of [ERISA’s goals.]” Id.
In conclusion, the majority’s approach is an end run around the limitations placed on the use of § 502(a)(3) and is willfully blind to the negative repercussions that undoubtedly will ensue. As § 502(a)(1)(B) provided an adequate remedy, compensation under § 502(a)(3) was unnecessary. For these reasons, I dissent.

. Section 502(a)(3) is also known as the “catchall’' provision and is codified at 29 U.S.C. § 1132(a)(3). Section 502(a)(1)(B) is codified at 29 U.S.C. § 1132(a)(1)(B).

. Neither Rochow, nor the majority claims that there is a second injury apart from the denial of benefits, preferring instead to gloss over this foundational premise by focusing on the perceived benefit derived by the defendant.

. Here, the district court concluded that an arbitrary and capricious denial of benefits is ipso facto a breach of fiduciary duty. R. 67 Order at 5, PagelD # 936. Based on this logic, any time there is an arbitrary and capricious denial of benefits, a plaintiff would have a viable claim for disgorgement of profits. Such a holding runs counter to Congress's intent and Varity's teaching.

. Characterizing the award of "profits” as prejudgment interest does not operate as a deus ex machina to resolve the inherent problems in the majority opinion. This court has previously found that an excessive award of prejudgment interest may cross the line from remedial to punitive and in the process violate ERISA. Ford, 154 F.3d at 618-19; see also Schumacher, 711 F.3d at 686 ("An excessive prejudgment interest award may contravene ERISA's remedial goal of simply placing the plaintiff in the position he or she would *435 have occupied but for the defendant's wrongdoing. Similarly, an exceedingly low prejudgment interest rate fails to make the plaintiff whole.”). The profits in this case, if considered as "interest,” would undoubtedly be considered excessive. Rochow has received, under the guise of "profits,” nearly quadruple the total amount of benefits due. to him.

. One need only refer to the district court’s Order Setting Method of Accounting and the Order Granting in Part and Denying in Part Plaintiff's Motion for Equitable Accounting in the present case to recognize what a complex and convoluted process this entails. Forcibly marching district courts into such a mire is unwarranted, unwise, and contrary to law.